**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| DARRELL GAEBEL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:22-CV-00141 |
| | ) | Judge Leonie M. Brinkema |
| UNITED STATES POLO | ) | |
| ASSOCIATION, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF DARRELL GAEBEL'S OPPOSITION TO DEFENDANT UNITED STATES POLO ASSOCIATION'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES…………………………………………………………………....iv

PRELIMINARY STATEMENT ..................................................................................... 1

STATEMENT OF FACTS ............................................................................................ 2

STANDARD OF REVIEW .......................................................................................... 8

ARGUMENT .................................................................................................................. 9

I.   Plaintiff has stated a claim for defamation and the USPA's statements were not priveleged ................................................................................................................ 9

A.   Virginia defamation law. ..................................................................................... 9

B.   The USPA made actionable statements.………………………………………………10

i.   The Notice violations contains false statements and defamatory implications....... 10

ii.   The USPA defamed Plaintiff by conducting a hearing without jurisdiction and with knowledge of the falsity of the allegations or with reckless disregard for their veracity.................................................................................................................... 13

iii.   The Final Order contains false statements and defamatory implications.......... 13

iv.   The USPA's statements are not privileged........................................................... 14

v.   Plaintiff has adequately alleged publication of actionable statements to third parties outside of the qualified Privilege ………………………………………………15

C.   The USPA's Conduct Constitutes Defamation *Per Se.*…………………………16

II.   The USPA's conduct of the disciplinary proceeding was inconsistent with its constitution, bylaws and rules...................................................................................17

A.   Virginia law governs the contractual dispute.……………………………………...17

B.   Illinois law allows for judicial intervention. ……………………………….………18

C.   USPA failed to follow its constitution, by-laws and rules. …………………….……19

i.   The USPA did not have jurisdiction over Plaintiff..……………………………20

ii.   The USPA violated its policies and procedures.……………………………….....21

iii.   The USPA breached good faith and fair dealing.………………………...………21

      iv.     **Plaintiff has alleged cognizable damages due to USPA's violation of its constitution, by-laws and rules**……………………………………………………………..22

  **D.**    **Defendant did not afford Plaintiff due process**…...…………………………………23

  **E.**    **Economic necessity is not required under Illinois law**……...…………………………25

  **F.**    **Plaintiff suffered an actionable deprivation**.……………………………………………25

**III.**    **Plaintiff plausibly pled a claim of intentional infliction of emotional distress.** ......... 26

  **A.**    **Defendant USPA's conduct recklessly caused Plaintiff severe emotional distress** …………………………………………………………………………..27

  **B.**    **Defendant USPA's conduct was outrageous or intolerable**.…………………………… 28

  **C.**    **Mr. Gaebel continues to suffer from severe emotional distress.** ............................ 29

  **D.**    **Defendant USPA's actions caused Mr. Gaebel's severe emotional distress.** .......... 30

  **CONCLUSION** ..................................................................................................... 30

## TABLE OF AUTHORITIES

**Cases** ..................................................................................................................... **Page**

*Air Wisconsin Pilots Protection Committee v. Sanderson,*

909 F.2d 213, 218 (7th Cir.1990) ............................................................... 21

*Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009) ............................................................................................. 8

*Bell Atl. Corp. v. Twombly,*

550 U.S. 544, 545, 127 S. Ct. 1955, 1959, 167 L. Ed. 2d 929 (2007) ................................. 8, 30

*Butler v. USA Volleyball,*

673 N.E.2d 1063, 1065 (Ill. App. Ct. 1996) ............................................... 24

*Carter v. Dominion Energy, Inc.*,

529 F. Supp. 3d 525, 540 (W.D. Va. 2021) ................................................ 14

*Cashion v. Smith*,

286 Va. 327, 339, 749 S.E.2d 526, 533 (2013) ......................................... 15

*Chapin v. Knight-Ridder, Inc.*,

993 F.2d 1087, 1092 (4th Cir. 1993) ................................................ 9, 11, 12

*Clayton v. Fairnak*, No.

CV JKB-18-2134, 2018 WL 6446440 ....................................................... 16

Cole v. JNO. Oakey,

2019 WL 3955802, at *5 (Va. Cir. Ct. 2019) ............................................. 29

Daniczek v. Spencer,

156 F. Supp. 3d 739, 758 (E.D. Va. 2016) .................................... 27, 28, 29

*Diamond v. United Food & Com. Workers Union Loc.*

*881*, 329 Ill. App. 3d 519, 526, 768 N.E.2d 865, 871 (2002) ........................... 19, 21

*Douglas v. Sentel Corp* ............................................................................... 17

*Dragulescu v. Va. Union Univ.*,

    223 F. Supp. 3d 499, 507 (E.D. Va. 2016) ........................................................ 9, 14

*Edwards v. City of Goldsboro,*

    178 F.3d 231, 243 (4th Cir. 1999) ..................................................................... 8

*Finn v. Beverly Country Club,*

    289 Ill.App.3d 565, 568, 225 Ill. Dec. 528, 683 N.E.2d 1191 (1997) ............... 19, 25

*Frye v. Commonwealth*,

    345 S.E.2d 267, 272 (Va. 1986) ...................................................................... 17

*Fuste v. Riverside Healthcare Ass'n, Inc.,*

    265 Va. 127, 134, 575 S.E.2d 858, 862 (2003) .................................................. 16

*Gasner v. County of Dinwiddie,*

    162 F.R.D. 280 (E.D. Va. 1995) ...................................................................... 8

*Gilmore v. Jones,* 370 F. Supp. 3d

    630, 666 (W.D. Va. 2019) .............................................................................. 14, 29

*Gottlieb v. Econ. Stores, Inc.,*

    199 Va. 848, 857–58 (1958) ........................................................................... 23

*Goulmamine v. CVS Pharmacy, Inc.,*

    138 F. Supp. 3d 652, 665 (E.D. Va. 2015) ....................................................... 15

Harris v. Kreutzer,

    624 S.E.2d 24 (Va. 2006) ............................................................................... 29

*Hatfill v. New York Times Co.,*

    416 F.3d 320, 331 (4th Cir. 2005) ................................................................... 9, 27

*Hickombottom v. City of Chicago,*

    739 F. Supp. 1173, 1180 (N.D. Ill. 1990) ........................................................ 25

*Jetform Corp. v. Unisys Corp.,*

11 F. Supp.2d 788 (E.D. Va. 1998) ........................................................................... 8

*Knapp v. Zoetis Inc.*,

No. 3:20CV191, 2021 WL 1225970 .................................................................. 17, 22

*Lee v. Dong-A Ilbo*,

849 F.2d 876, 878 (4th Cir. 1988) .................................................................... 12, 13

*Lexington Ins. Co. v. Horace Mann Ins. Co.*,

186 F. Supp. 3d 920, 929 (N.D. Ill. 2016), *aff'd*, 861 F.3d 661 (7th Cir. 2017) ............... 20, 21

*Lokhova v. Halper*,

441 F. Supp. 3d 238, 262 (E.D. Va. 2020), aff'd, 995 F.3d 134 (4th Cir. 2021) ............. 12, 13

*Long v. Abbruzzetti*,

254 Va. 122, 127(1997) ......................................................................................... 23

*Meer v. Graham*,

524 F. Supp. 2d 1044, 1052 (N.D. Ill. 2007) ........................................................ 26

*Moorehead v. State Farm Fire & Cas. Co.*,

123 F. Supp. 2d 1004, 1006–07 (W.D. Va. 2000) ................................................. 23

*Nat'l Ass'n of Sporting Goods Wholesalers, Inc. v. F.T.L. Mktg. Corp.*,

779 F.2d 1281, 1285 (7th Cir. 1985) ...................................................................... 18

*Omosegbon v. Wells*,

335 F.3d 668, 675 (7th Cir. 2003) ......................................................................... 26

*Par. v. Commonwealth*,

56 Va. App. 324, 329, 693 S.E.2d 315, 318 (2010) ............................................... 17

Perk v. Worden,

475 F. Supp. 2d 565, 570 (E.D. Va. 2007) ...................................................... 26, 28

*Republican Party of N.C. v. Martin*,

980 F.2d 943, 952 (4th Cir. 1992) ........................................................................... 8

*Roberts v. Shaw Group, Inc.*,

    2008 WL 2959747 (E.D. Va. 2008) ......................................................................... 8

Russo v. White,

    400 S.E.2d 160 (Va. 1991) .................................................................................... 29

Sanford v. Virginia,

    No. CIV. A. 3:08CV835, 2009 WL 2447959, at *3 (E.D. Va. July 28, 2009) ............. 28, 29, 30

*Schaecher v. Bouffault*,

    290 Va. 83, 91, 772 S.E.2d 589, 594 (2015) ............................................................ 9

*Seip v. Rogers Raw Materials Fund, L.P.*,

    408 Ill. App. 3d 434, 443 (2011) ......................................................................... 22

*Smith v. Frye,*

    488 F.3d 263 (4th Cir. 2007) ................................................................................ 8

*Starks v. Abbasi*,

    2009 WL 2959747 (E.D. Va. 2009) ......................................................................... 8

*Stockbridge v. Gemini Air Cargo, Inc.,*

    269 Va. 609, 611 S.E.2d 600, 602 (2005) ............................................................. 17

*Tronfeld v. Nationwide Mut. Ins. Co.*,

    272 Va. 709, 713, 636 S.E.2d 447, 449 (2006) ...................................................... 16

*Van Daele v. Vinci*,

    51 Ill.2d 389, 394, 282 N.E.2d 728 (1972) ...................................................... 19, 24

*Willard v. Aetna Cas. & Sur. Co.*,

    213 Va. 481, 483, 193 S.E.2d 776, 778 (1973) ...................................................... 18

*William H. Gordon Assocs., Inc. v. Heritage Fellowship, United Church of Christ*,

    291 Va. 122, 150 (2016) .................................................................................... 22

Williams v. Agency, Inc.,

997 F. Supp. 2d 409, 414 (E.D. Va. 2014) ................................................................. 27

**Statutes**

28 U.S.C. § 1332(c)(1) ................................................................................................ 7

32 CFR § 147.7(b) ..................................................................................................... 16

Va. Code Ann. § 18.2-57 ........................................................................................... 17

## PRELIMINARY STATEMENT

This lawsuit centers on Defendant USPA's defamatory statements regarding Plaintiff Darrell Gaebel as well as Defendant's material breach of the parties' contractual agreement. The underlying incident stems from a July 10, 2021 polo match at a non-USPA event and a non-USPA equine facility (Great Meadow). During the polo match, a fourteen-year-old, Aleem Siddiqui (the "Minor"), "T-boned" his horse into Plaintiff's back, causing significant pain to Mr. Gaebel. Following the incident, the Minor falsely alleged that Plaintiff called him a "motherfucking nigger". Even though neither witnessed the on-field incident, Minor's coach, Delora Burner, and his mother both sent complaints regarding this incident to the USPA. Neither complaint was valid as a complaint must be filed by a USPA member who witnessed the incident relative to the complaint first-hand. Moreover, the USPA did not have jurisdiction to entertain the complaint because (as discussed above) the alleged incident did not take place at a USPA event or a USPA club.

Defendant USPA abused its authority over Mr. Gaebel. Despite no evidence to corroborate the Minor's allegation and that it had no valid complaint or jurisdiction, the USPA issued a written statement of charges against Plaintiff arising for this incident. In its written statement, Defendant mischaracterized the evidence to be presented and defamed Plaintiff by providing a list of multiple witnesses it averred had "first-hand knowledge of the incident at issue" who were expected to testify that Plaintiff "used the racial slur … refused to apologize and instead attempted to bully [the Minor] by pushing his shoulder and slapping his upper arm…." Am. Compl. ("AC") ¶¶19-20.

Defendant USPA unilaterally scheduled a disciplinary hearing (without jurisdiction and in breach of the contract between the USPA and Gaebel) where it allowed the Minor to continue to repeat his defamatory statement against Mr. Gaebel. Preceding and throughout the hearing, the

USPA arbitrarily applied its constitution and bylaws to suit its needs at the time and further evidenced its bias against Plaintiff during the proceeding on several occasions, including one of the hearing officers bolstering the Minor's credibility during the Minor's testimony, as well as preventing Plaintiff from presenting his full defense.  In doing so, the USPA undoubtedly violated its governing documents to Mr. Gaebel's detriment despite agreeing to uphold such when Mr. Gaebel and the USPA entered into a binding contract.

The USPA's bias and defamatory conduct towards Mr. Gaebel only continued after the hearing.  The USPA further defamed Mr. Gaebel in its Final Order, stating that it did not reject the Minor's testimony (despite there being no form of corroboration of this testimony) and further causing Mr. Gaebel to be perceived as a racist within the polo community.  Thus, Plaintiff brought this present lawsuit to remedy the USPA's defamatory conduct, to vindicate his rights under the terms of his contract with the USPA, and to recover damages for the serious harm caused by the USPA's actions, including the severe emotional distress he has suffered.

**STATEMENT OF FACTS**

Plaintiff Darrell Gaebel is a seventy-three-year-old retired United States Navy Commander and a senior level executive with a federal government contractor in Virginia.  Mr. Gaebel has been an avid polo player for more than a decade and is a Registered Player member in good standing with Defendant United States Polo Association ("USPA").  AC ¶1.  He frequently plays at the USPA registered club, Twilight Polo Club in Middleburg, Virginia without incident.

**The Minor Falsely Accuses Plaintiff of Using A Racial Slur**

On the evening of July 10, 2021, Mr. Gaebel played a polo exhibition match at Great Meadow in The Plains, Virginia.  AC ¶10.  The exhibition match was not organized under the USPA or held at a USPA member club.  AC ¶10.   During the match, the Minor and his horse "T-

boned" Plaintiff and his horse, causing the Minor's horse's metal shanks of the bit to ram into Mr. Gaebel's spine.  AC ¶11.  Mr. Gaebel doubled over in great pain and exclaimed "motherfucker" at the ground.[1]  AC ¶11.  As a result of his recklessness, the Umpire issued the Minor a dangerous riding foul for the T-bone hit into Plaintiff.  AC ¶11.

After the match, Mr. Gaebel learned that the Minor claimed that Plaintiff had called him a "motherfucking nigger."  Having not said such, Plaintiff vehemently denied the accusation and told the Minor and his family that he never uses that racial slur and that such is not even in his "lexicon."  AC ¶12.

**The USPA's Complaint**

Despite Plaintiff's vehement denial of the allegation, on July 11, 2021, Delora Burner ("Burner"), a USPA member and owner of the club whose team the Minor played for, Battlefield Polo Club, sent a purported complaint to the USPA alleging that Plaintiff called the Minor a "motherfucking nigger" and bullied the Minor by pushing the Minor's shoulder.  AC ¶13.  Burner admittedly did not witness the incident on the field.  AC ¶13.  Similarly, on July 11, 2021, Humera Rahman, the Minor's mother and a non-USPA member, sent a letter to the USPA alleging that Plaintiff called her son a "motherfucker" and "the N-word" and that Plaintiff pushed her son's shoulder in an attempt to intimidate him.  AC ¶14.  Like Burner, Rahman admittedly had not witnessed the incident on the field.  AC ¶14.

The USPA has complete discretion in determining whether to issue charges based upon a complaint regarding its members.  AC ¶6.  However, neither Burner's nor Rahman's complaint

---

[1]     Significantly, Plaintiff has been medically diagnosed with spinal issues and received treatment for this condition, and, as a result of this condition, the hit was particularly painful.

were valid under USPA guidelines because such complaints must be filed by a USPA member who witnessed the incident relative to the complaint first-hand.  *See* AC ¶4.

**The USPA's Involvement**

On July 23, 2021, the USPA issued a Notice of Alleged Conduct Violations, Issuance of USPA Charges, and Notice of Hearing from Defendant (collectively, "the Notice") against Mr. Gaebel based on the invalid complaints and allegations of Burner and Rahman.  AC ¶17; AC, Ex. C.  The Notice further informed Mr. Gaebel that he faced possible suspension from the USPA, a possible fine of more than $20,000 and advised him to retain counsel.  AC ¶25

The USPA was aware that it lacked jurisdiction to issue the Notice as the alleged incident between Mr. Gaebel and the Minor occurred during a non-USPA match and at a non-USPA club. AC ¶16.  In addition, the USPA was aware that no one could corroborate the Minor's allegation outlined in the Notice.  *See* AC ¶15.  The USPA's decision to intervene in this matter was also a significant divergence from its past practices because the USPA typically treats disputes arising from incidents at member clubs, and even some disputes involving club members, as internal club matters and does not convene disciplinary hearings for such incidents, and it especially does not convene a hearing for non-member clubs and non-members.  AC ¶16.

**The USPA Issued A Defamatory Notice**

Despite being aware that no other ear witness could corroborate the Minor's allegations, The USPA issued a Notice that contained inflammatory and false accusations against Plaintiff, portending to list multiple witnesses "with first-hand knowledge of the incident at issue" who were expected to testify that Plaintiff "used the racial slur … refused to apologize and instead attempted to bully [the Minor] by pushing his shoulder and slapping his upper arm…." AC ¶¶19-20; AC, Ex. C, IV. B.

The Notice further mischaracterized the nature of the evidence that would be presented against Plaintiff.  In addition to listing several irrelevant documents, none of which contained even circumstantial evidence of culpability, the Notice listed "two (2) videos of the subject arena polo game."  AC ¶21.  This statement alone, couched under the heading of "Additional Evidence" and placed immediately after the list of witnesses and the false characterization of their testimony, suggested that the USPA possessed video evidence to support the issuance of charges against Plaintiff.  AC ¶21.  That was yet another false and defamatory representation by the USPA.  AC ¶21.  If anything, one of the videos tends to exonerate Plaintiff as it plainly shows the Minor driving his horse into Plaintiff and immediately riding away from the scene with a broad smile on his face. AC ¶22; AC, Ex. G.

**The USPA Conducted A Sham Disciplinary Hearing**

The Disciplinary Hearing occurred on August 6, 2021.  Preceding and throughout the hearing, the USPA engaged in a multifaceted scheme to interfere with Mr. Gaebel's defense.  The USPA refused to sequester the Minor, his parents, and Burner during the hearing, even though it intended to call them as witnesses.  AC ¶27.  At the onset of the hearing, one of the USPA hearing officers (the decision makers) asked the parties if the matter could be settled with an apology from Plaintiff, indicating his bias against Plaintiff as Mr. Gaebel had already emailed a statement to the hearing officers unequivocally denying the allegations against him.  AC ¶28.  The USPA also refused to address Plaintiff's arguments on jurisdiction at the beginning of the hearing and instead determined that it would address that issue after the hearing.  AC ¶30.  This opened another forum for the Minor, his parents and Burner to espouse their defamatory allegations against Mr. Gaebel.

During the hearing, the Minor repeated his baseless and defamatory allegations on the record.  AC ¶32.  The direct examination occurred without interruption; however, Plaintiff's

counsel's cross examination was repeatedly interrupted by the Minor's father, and the USPA failed to intervene. *See* AC ¶32. In addition, the hearing officers continued to show their bias against Plaintiff, including asking the Minor leading questions in an attempt to bolster his credibility. AC ¶¶33-34; AC, Ex. E, page 61, lines 9-19 ("[Hearing officer] Beal: I have one or two. So after watching videos of yourself playing, Aleem -- because I assume you've seen quite a few – would you say that you're a mouth-breather and your teeth show when you play polo, or would you say you keep your mouth closed all the time and breathe through your nose? Mr. Aleem Siddiqui: I would say sometimes I do open my mouth. I tend to keep my tongue out of my mouth a lot when I play, but I can't really tell.").

No earwitness or eyewitness at the hearing corroborated the Minor's allegation that Plaintiff used a racial slur. AC ¶37. Nevertheless, the USPA continued to engage in a series of other biased acts against Plaintiff at the disciplinary hearing. *See, e.g.,* AC ¶63. The USPA ultimately intervened and prevented Plaintiff from presenting his full defense, including causing Plaintiff to eliminate one witness and to shorten the testimony of other key witnesses. *See* AC ¶36

**The USPA Issued A Defamatory Final Order**

On August 20, 2021, the USPA issued its Final Order regarding the allegations against Plaintiff. AC, Ex. F. Despite ruling that there was insufficient evidence to sanction Plaintiff, as the Minor had no corroborating evidence whatsoever, the USPA failed to outright reject the Minor's testimony. AC ¶37. The USPA stated, in the Final Order, that it did not reject the Minor's defamatory allegations: "[i]n reaching this decision, the Hearing Officers [Beal and Green] do not reject [the Minor's] testimony. Rather, as the appointed representatives of the EC [Executive Committee], they are obligated to apply the DPP's requirement" that the Executive Committee shall have the burden of proving any charge. AC ¶37; AC, Ex. F, page 4.

The USPA further published these defamatory statements against Mr. Gaebel to its membership.  Even though the USPA knew the contents of the Final Order would be made available to every Player Member, it nevertheless attached the Notice as an exhibit to the Final Order, ensuring that all Member Players have full access to the false and defamatory statements perpetuated by the USPA and the Minor.  AC ¶39.

**The USPA Has Caused Mr. Gaebel Severe Emotional Distress**

The USPA's tepid Final Order emboldened the Minor and his accomplices.  Following the issuance of the Final Order, Minor bragged to other USPA members that he and his parents were going to call Plaintiff's work to get him fired.  AC ¶41.  Thus, the USPA's actions, falsehoods, and failure to properly exonerate Plaintiff continues to subject Plaintiff to baseless public ridicule and emotional distress.  AC ¶41.  These actions have caused Mr. Gaebel to continue to suffer from severe anxiety, reputational harm, sleeplessness, marital strife, and fear that he may lose his job as a government contractor.  AC ¶¶42,73.

**Removal to Federal Court**

Plaintiff originally initiated this action in the Circuit Court for Loudon County, Virginia.  Prior to answering the state court complaint, the USPA noticed this action for removal to federal court under 28 U.S.C. § 1332(c)(1), alleging complete diversity of citizenship and an amount in controversy greater than $75,000.   The USPA then moved to dismiss Plaintiff's complaint.  Plaintiff subsequently filed an amended complaint.  Now, the USPA is seeking dismissal of Plaintiff's amended complaint.

As discussed more fully below, the USPA's motion should be denied.

## STANDARD OF REVIEW

A motion requesting dismissal pursuant to Rule 12(b)(6) tests the adequacy of the averments contained in the complaint.  *Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999).  Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the...claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545, 127 S. Ct. 1955, 1959, 167 L. Ed. 2d 929 (2007).  Factual averments contained in the complaint are presumed to be true.  *Smith v. Frye,* 488 F.3d 263 (4th Cir. 2007); *Republican Party of N.C. v. Martin,* 980 F.2d 943, 952 (4th Cir. 1992); *Gasner v. County of Dinwiddie,* 162 F.R.D. 280 (E.D. Va. 1995).

Allegations contained in a Complaint must be "simple, concise, and direct." Fed. R. Civ. P. 8(a)(2) and 8(d)(1).  A plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," stating a claim that is "plausible on its face," rather than merely "conceivable." *Twombly*, *supra*, at 545, 127 S. Ct. 1955.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Indeed, whether a plausibility threshold has been reached is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 663-64. *See also Roberts v. Shaw Group, Inc.*, 2008 WL 2959747 (E.D. Va. 2008). *See also Starks v. Abbasi*, 2009 WL 2959747 (E.D. Va. 2009)*. See also Jetform Corp. v. Unisys Corp.*, 11 F. Supp.2d 788 (E.D. Va. 1998).

**ARGUMENT**

I.   **Plaintiff has stated a claim for defamation and the USPA's statements were not privileged.**

   A.   **Virginia defamation law**.

In Virginia, when a plaintiff alleges defamation by publication, the elements are "(1) publication of (2) an actionable statement with (3) the requisite intent." *Schaecher v. Bouffault*, 290 Va. 83, 91, 772 S.E.2d 589, 594 (2015).   An actionable statement must be both false and defamatory. *Id.*   Importantly, at the motion to dismiss stage, the Court must assume the falsity of any statements that the Complaint alleges to be false. *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1092 (4th Cir. 1993).

Actionable statements must carry the requisite defamatory sting. *Dragulescu v. Va. Union Univ.*, 223 F. Supp. 3d 499, 507 (E.D. Va. 2016).   That "sting" exists when the statement "tend[s] so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Chapin*, 993 F.2d at 1092 (citing Restatement (Second) of Torts § 559).   Defamatory words "are those that make the plaintiff appear odious, infamous, or ridiculous." *Id.*   "It is sufficient if the language tends to injure the reputation of the party, to throw contumely, or to reflect shame and disgrace upon him, or to hold him up as an object of scorn, ridicule or contempt." *Schaecher v. Bouffault*, 290 Va. 83, 92, 772 S.E.2d 589, 594 (2015) (internal citation omitted).   Whether a statement proves actionable, in that it contains a provably false factual connotation and inflicts the requisite defamatory sting, is a question of law. *Id*.

A defamatory charge may be made expressly or by "inference, implication or insinuation." *Hatfill v. New York Times Co.*, 416 F.3d 320, 331 (4th Cir. 2005).   It does not matter how artful or disguised the modes in which the meaning is concealed if it is in fact

9

defamatory.  *Id.*  Courts must consider not only the words themselves but also the "inferences fairly attributable" to them.  *Id.*  In determining whether the words and statements complained of are reasonably capable of the meaning ascribed to them by innuendo, every fair inference that may be drawn from the pleadings must be resolved in the plaintiff's favor.  *Id.*

> **B.**     **The USPA made actionable statements.**

Examined against these standards, Plaintiff's Complaint adequately alleges that the statements at issue constituted actionable defamation under Virginia law.  Specifically, Defendant perpetuated and contributed to the defamation of Plaintiff by (1) republishing the defamatory statements by issuing unfounded charges against Plaintiff; (2) conducting a disciplinary hearing without jurisdiction and with knowledge of the falsity of the allegations or, at minimum, with reckless disregard for their veracity; and (3) making the Final Order—complete with the defamatory Notice—available to practically the entire association.   The USPA's statements communicate factual content that undoubtedly carry the requisite defamatory sting.

> **i.**     **The Notice violations contains false statements and defamatory implications.**

The Notice outlining the charges against Plaintiff contained inflammatory and false accusations against Plaintiff, portending to list multiple witnesses "with first-hand knowledge of the incident at issue" who were expected to testify that Plaintiff "used the racial slur…refused to apologize and instead attempted to bully [the Minor] by pushing his shoulder and slapping his upper arm."  AC, Ex. C- Notice.  On its face, this statement was false.  Apart from the Minor himself, only one of the so-called witnesses identified in the Notice actually had first-hand knowledge of the alleged event and that witness unequivocally disputed the Minor's account. Despite the USPA's assertion in the Notice, the other witnesses were not present for the alleged event and were incapable of corroborating the Minor's accusations.  Nonetheless, the USPA falsely

represented the nature of the witnesses' testimonies and used it as a pretext to impugn Plaintiff's character before the entire USPA.

The fact that Burner's complaint about Plaintiff (attached to the Notice) explicitly states that the Minor's allegations could not be corroborated by witnesses further illuminates the defamatory nature of the statements published by the USPA in its Notice. The content of the Notice as it relates to the identity of the witnesses and the substance of their testimonies was unsubstantiated and not supported by the Burner's complaint. In this regard, Defendant knew at the time the Notice was published that the statements in the Notice were false.

Additionally, the Notice mischaracterized the nature of the evidence that would be presented against Plaintiff at the hearing. Specifically, the evidence identified was purportedly "relevant" to Mr. Gaebel's trumped up alleged conduct violations. To the contrary, the evidence identified ("two videos of the subject arena polo game") did not display any conduct corroborating the Minor's allegations. In fact, one of the videos displays the Minor driving his horse into Plaintiff and immediately riding away from the scene with a broad smile on his face and shrugging his shoulders. Under no circumstance, can this video rise to the level of "evidence" capable of sustaining the charge against Plaintiff, as the USPA falsely claimed in the Notice.

Indeed, the Notice's mischaracterization of the witnesses and the evidence contain the requisite "sting" because the statements contained therein tend so to harm the reputation of Plaintiff as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.[2] *See Chapin*, *supra*. This is especially true given that the USPA has bound itself to maintain a record of all complaints and final decisions regarding complaints,

---

[2]      On information and belief, the USPA has continued to republish the defamatory statements against Plaintiff to USPA and Non-USPA members.

"including the nature of the violation and any penalty imposed," and to publish them to any "Registered Player Member" upon request.  AC, Ex. B at I.B.1.c.

Defendant argues that it is significant that the Notice prefaces its defamatory statements about Plaintiff with the word "alleged" and that Burner, did in fact, make the allegations recited in the Notice.  (MTD at 8-9).  Even if the USPA is not considered the originator of the defamatory statements, it is still liable.  "Under the republication rule, one who repeats a defamatory statement is as liable as the original defamer…[because this] rule is based on the legal fiction that the republisher adopts the defamatory statement as his own." *Lee v. Dong-A Ilbo*, 849 F.2d 876, 878 (4th Cir. 1988) (citation omitted).  Therefore, Defendant's argument must fail because, at the motion to dismiss stage, the USPA, at minimum, adopted the defamatory statements regarding Plaintiff in its Notice and the Court must assume the falsity of any statements that the Complaint alleges to be false.  *See Chapin*, *supra*.  In his Amended Complaint, Gaebel explicitly states that the allegations in the Notice (and in Burner's complaint) are false because he did not engage in the conduct alleged and the allegations could not be substantiated.  Plaintiff's allegation of falsity is neither vague nor conclusory and it does not contradict an external document.  *See Lokhova v. Halper*, 441 F. Supp. 3d 238, 262 (E.D. Va. 2020), aff'd, 995 F.3d 134 (4th Cir. 2021) (stating that the court need not accept an allegation of falsity that is "vague and conclusory or contradicts an external document incorporated in the complaint").  In fact, Defendant knew the allegations made by Burner were false, or at minimum recklessly disregarded the truth when Defendant published Burner's allegations.  Consequently, Defendant knew that Burner's allegations did not warrant further investigation and the issuance of the Notice was baseless.  Therefore, the USPA's defamatory statements in the Notice are actionable.

ii.   **The USPA defamed Plaintiff by conducting a hearing without jurisdiction and with knowledge of the falsity of the allegations or with reckless disregard for their veracity.**

Contrary to Defendant's contention, the USPA can be held liable for defamation for conducting a hearing in which defamatory statements were made.  Because the original defamatory statements outlined in the Notice were published by the USPA, the USPA is liable for subsequent publications furthering that defamation.  *See Lokhova*, 441 F. Supp. 3d at 257 (the author or originator of a defamation is liable for a republication or repetition, provided it is the natural and probable consequence of his act, or he has presumptively or actually authorized or directed its republication).  In the alternative, the USPA can also be held liable for republishing defamatory statements.  *See Lee*, 849 F.2d at 878.

Here, Plaintiff has alleged that, at the disciplinary hearing, Defendant contributed to, furthered, perpetuated and gave credence to the defamatory statements against Plaintiff at the hearing.  As explained in Section I(B)(iv), there was no qualified privilege associated with this hearing.  Nevertheless, the USPA called the Minor, the Minor's family and the Minor's coach (Burner) as its witnesses during the hearing; thus, adopting their testimony as its own.  The USPA knew or should have known these statements were false[3] and defamatory towards Plaintiff and that it had no basis to hold this hearing because it lacked jurisdiction.[4]  However, it allowed these witnesses to publish/republish these defamatory statements to Plaintiff's detriment at the hearing.  As such, the USPA can be liable for these statements made during the hearing.

iii.   **The Final Order contains false statements and defamatory implications.**

---

[3]      The USPA was unable to provide corroborating witnesses (other than the Minor, his parents and his coach) related to the alleged assault and battery, even though the alleged incident took place close to the arena with several of the Minor's other family members and spectators in the vicinity.

[4]      On information and belief, during its investigation prior to the hearing, the USPA expressed to several witnesses that the allegations against Plaintiff were not supported because the Minor is not Black.

The Final Order states that the USPA hearing officers "do not reject [the Minor's] testimony."  AC, Ex. F- Final Order.  Clearly, this statement implies that the USPA did not consider the Minor to be lying.  Indeed, the statement perpetuates the defamation of Plaintiff.  Plaintiff's interpretation of the Final Order is reasonable and actionable.  *See Gilmore v. Jones,* 370 F. Supp. 3d 630, 666 (W.D. Va. 2019) (It is sufficient for plaintiffs who qualify as private figures to show that the defendant who published an allegedly defamatory statement either "knew it to be false, or believing it to be true, lacked reasonable grounds for such belief, or acted negligently in failing to ascertain the facts on which the publication was based.").

But, even if Plaintiff interpreted the Final Order as an acknowledgment that the Minor's testimony could have been sincere but mistaken, as Defendant argues (MTD at p. 12), Plaintiff's defamation claim would still be viable.  *See Carter v. Dominion Energy, Inc.*, 529 F. Supp. 3d 525, 540 (W.D. Va. 2021) (Circumstances may arise where a statement that is facially true is still actionable. This can occur if "the statements conveyed [a] defamatory implication" intended by the speaker…").

### iv.    The USPA's statements are not privileged.

Under Virginia law, qualified privilege attaches to communications between persons on a subject in which the persons have an interest or duty.  *Dragulescu*, 223 F. Supp. 3d at 508.  That privilege does not apply here because the communications regarding Plaintiff (the Notice, the hearing, and the Final Order) were not exclusively between persons on a subject in which the persons have an interest or duty.  Instead, the communications were between the USPA and its entire membership at large.  *See* AC, Ex. B- Bylaws (permitting the publication of all complaints and penalties imposed to any "Registered Player Member" upon request).  In addition, Defendant

cites no authority or analogous cases under Virginia law in support of the application of a qualified privilege under similar circumstances.

Assuming arguendo that this Court determines that the USPA's statements are privileged, Plaintiff has defeated that privilege by establishing that the Defendant acted with malice.  A non-exhaustive list of ways to prove malice and defeat the privilege include a showing that: "(1) the statements were made with knowledge that they were false or with reckless disregard for their truth; (2) the "statements [we]re communicated to third parties who have no duty or interest in the subject matter"; (3) the statements were motivated by personal spite or ill will; (4) the statements included "strong or violent language disproportionate to the occasion,"; or (5) the statements were not made in good faith.  *Cashion v. Smith*, 286 Va. 327, 339, 749 S.E.2d 526, 533 (2013).  Any one of these ways to show malice, if proved, defeats the privilege. *Goulmamine v. CVS Pharmacy, Inc.*, 138 F. Supp. 3d 652, 665 (E.D. Va. 2015).

Here, at minimum the statements were not made in good faith given the lack of corroboration of the Minor's allegations and the repeated denials of Plaintiff.  Further, the USPA's malice is evidenced by making its statements with knowledge that they were false or with reckless disregard for their veracity (i.e., by issuing an Final Order explicitly stating that it did not reject the Minor's testimony despite there being no evidence to support the Minor's testimony) and by communicating the statements to third parties who have no duty or interest in the subject matter (i.e., by publishing the Notice and Final Order for any USPA member from any club in an state for any reason to review).

> **v.    Plaintiff has adequately alleged publication of actionable statements to third parties outside of the qualified privilege.**

By not explicitly identifying which USPA members Defendant republished the Notice and Final Order to upon request does not render Plaintiff's claims insufficient at this stage.

15

Under Virginia law, for a pleading alleging defamation, the Plaintiff is not required to "identify to whom the statements were made and under what circumstances." *Fuste v. Riverside Healthcare Ass'n, Inc.*, 265 Va. 127, 134, 575 S.E.2d 858, 862 (2003). Instead, "details such as the time and place of the alleged communication, the name of a defendant's agent, and the names of the individuals to whom the defamatory statement was purportedly communicated can be provided in a bill of particulars if not included in a plaintiff's pleading." *Id.*

Here, Plaintiff has alleged that USPA's final order and Notice are available to the USPA membership. Plaintiff has also alleged that the USPA's actions have caused rumors to spread throughout the polo community. At this stage, Plaintiff is not required to provide every detail relative to the USPA's publication of the defamatory final order and Notice. Plaintiff is permitted to provide further information and specifics at a later time without any prejudice to either party.

C.   **The USPA's Conduct Constitutes Defamation *Per Se*.**

A statement is *per se* defamatory if it imputes that a person committed some criminal offense involving moral turpitude, for which the party, if the charge is true, may be indicted and punished, is unfitness to perform the duties of a job or a lack of integrity in the performance of duties, or prejudices the party in its profession or trade. *See Tronfeld v. Nationwide Mut. Ins. Co.*, 272 Va. 709, 713, 636 S.E.2d 447, 449 (2006). Contrary to the Defendant's assertions (MTD at 7n.2), plaintiff has alleged a defamation *per se* claim (AC Count I).

The USPA's defamatory statements prejudice Mr. Gaebel's profession and moral character. As a government contractor, the USPA's publication of defamatory information regarding Mr. Gaebel would impact his security clearance and his profession.[5] The threat to his

---

[5]     *See* 32 CFR § 147.7(b) (explaining that a security clearance holder may be disqualified based on "reliable, unfavorable information provided by associates, employers, coworkers, neighbors and other acquaintances); *see also Clayton v. Fairnak*, No. CV JKB-18-2134, 2018 WL 6446440, at *4 (D. Md. Dec. 10, 2018) (explaining that "the highly sensitive nature of government work requiring a security

security clearance and his profession sufficient to plead a claim of defamation *per se*.  *See, e.g.*, *Douglas v. Sentel Corp.*, No. 1:18-CV-1534-TSE-MSN, 2020 WL 4747783, at *4 (E.D. Va. Mar. 11, 2020), *report and recommendation adopted as modified*, No. 1:18-CV-1534, 2020 WL 2576183 (E.D. Va. May 20, 2020) (finding that the party established a claim of defamation *per se* under Virginia law where the defendant's defamatory statement posed a risk to plaintiff's security clearance and prospective employment).  These threats are sufficient to plead a claim of defamation *per se*.  In addition, the USPA's statement that Mr. Gaebel attempted to bully [the Minor] by pushing his shoulder and slapping his upper arm," AC ¶¶19-20, is defamatory *per se* as it imputes that Plaintiff committed a crime (assault and battery) under Virginia law.[6]  Therefore, Mr. Gaebel has plausibly pled a claim of defamation *per se*.

## II.     The USPA's conduct of the disciplinary proceeding was inconsistent with its constitution, by-laws, and rules.

### A.     Virginia law governs the contractual dispute.

The contract between Plaintiff and the USPA does not contain a choice of law provision. Generally, the law of the state of incorporation normally determines issues relating to the internal affairs of a corporation.  *Stockbridge v. Gemini Air Cargo, Inc.,* 269 Va. 609, 611 S.E.2d 600, 602 (2005).  Questions of substantive law are governed by the law of the place of the transaction or the place where the right is acquired (*lex loci*) while questions of procedure and remedy are governed by the law of the place where the action is brought (*lex fori*).  *Knapp v. Zoetis Inc.*, No. 3:20CV191, 2021 WL 1225970, at *6 (E.D. Va. Mar. 31, 2021) (citing *Frye v.*

---

clearance gives rise to the inference that any black mark on [plaintiff]'s record—no matter how small or ambiguous—would impugn his fitness and qualification for work at that level in the industry.").

[6]      Assault is "an attempt or offer, with force and violence, to do some bodily hurt to another", and battery is "a willful or unlawful touching of another."  *Par. v. Commonwealth*, 56 Va. App. 324, 329, 693 S.E.2d 315, 318 (2010) (internal quotation marks and citations omitted).  Both assault and battery are unlawful conduct and punishable with up to six months in prison.  Va. Code Ann. § 18.2-57.

*Commonwealth*, 345 S.E.2d 267, 272 (Va. 1986).  Ultimately, "[t]he court of the forum state determines according to its own conflict of laws rules whether a question of law is substantive or procedural."  *Willard v. Aetna Cas. & Sur. Co.*, 213 Va. 481, 483, 193 S.E.2d 776, 778 (1973).

Here, Defendant was organized under the laws of Illinois, is headquartered in Florida, and conducts business in the Commonwealth of Virginia.  There is no choice of law provision requiring the application of Illinois law to this contractual dispute between Plaintiff and the USPA.  Moreover, given the relative ease in which new members can sign up to join the USPA (under 10 minutes with a $200 registration fee online or via telephone) and that the USPA does not provide members with a copy of its constitution, bylaws or rules (of which are approximately 300 hundred pages long) until after they join and pay, it is highly unlikely that its members (outside of Illinois) contemplate that Illinois law would govern any contractual disputes with the USPA as members join from across the country and globally.

Plaintiff's Amended Complaint seeking enforcement of his contractual rights with the USPA does not require any interference with the internal affairs of the USPA.  Notably, Plaintiff is neither an officer nor a director of the USPA.  Plaintiff's membership in the USPA does not afford him an ownership interest in the association, nor the right to vote on matters involving the direction or organization of the USPA. To this end, enforcement of Plaintiff's contractual rights would not supplant the decision-making of USPA leadership with regard to the handling of its business.  Plaintiff is effectively a USPA customer seeking to enforce the terms of his agreement with the USPA.  Thus, the Amended Complaint does not implicate Defendant's internal affairs.

## B. Illinois law allows for judicial intervention.

But, even if this Court believes that the internal affairs of the USPA have been implicated in this case, judicial intervention is warranted.  The laws of the state of the USPA's incorporation

(Illinois) reflect that a court applying Illinois law will intervene in the internal affairs of a voluntary association if (1) the association has failed to afford members rudimentary due process, or (2) the association has violated its own charter, bylaws, or some external law.  *Nat'l Ass'n of Sporting Goods Wholesalers, Inc. v. F.T.L. Mktg. Corp.*, 779 F.2d 1281, 1285 (7th Cir. 1985).  Indeed, Illinois courts have intervened in the internal affairs of a voluntary association when (1) the member might suffer a financial loss or "economic necessity" is at stake (*Van Daele v. Vinci*, 51 Ill.2d 389, 394, 282 N.E.2d 728 (1972).); (2) the organization violated its own internal rules (*Finn v. Beverly Country Club*, 289 Ill.App.3d 565, 568, 225 Ill. Dec. 528, 683 N.E.2d 1191 (1997)); or (3) in cases of "mistake, fraud, collusion or arbitrariness" (*id*.).

Here, the USPA unquestionably violated its own internal rules and acted in an arbitrary manner towards Plaintiff.  Specifically, (1) the USPA conducted a disciplinary hearing without jurisdiction over Plaintiff, (2) the USPA moved forward with an improperly brought complaint against Plaintiff and arbitrarily applied policies and procedures without due notice, and (3) the USPA arbitrarily acted in its discretion to interpret the DPP and how to conduct disciplinary hearings in breach of the implied covenants of good faith and fair dealing.  Therefore, judicial intervention is warranted in this case.

### C.    USPA failed to follow its constitution, by-laws and rules.

Plaintiff agreed to abide by the USPA Constitution, Bylaws, Rules and Procedures, Code of Conduct, and Membership Terms and Conducts when he registered to become a member of the USPA, and that contract also binds the conduct of the USPA.  *Diamond v. United Food & Com. Workers Union Loc. 881*, 329 Ill. App. 3d 519, 526, 768 N.E.2d 865, 871 (2002)

### i.      The USPA did not have jurisdiction over Plaintiff.

Contrary to Defendant's assertions, the USPA did not have jurisdiction over Plaintiff when it held the disciplinary hearing.  The USPA's hearing was based on an alleged incident that did not take place at a USPA match or at a USPA club.  In its Motion (at p. 23), the USPA takes a strained reading of the USPA bylaws.  The bylaws state that "the Board of Governors has the authority to impose disciplinary measures relating to conduct violations on the field, Member conduct off the field, issues relating to equine welfare, and equine drug medication rules." AC Exhibit B, Part I. The construction of a contract is a question of law and if the contractual language is unambiguous, the Court must construct the contract according to the words' plain and ordinary meaning. *Lexington Ins. Co. v. Horace Mann Ins. Co.*, 186 F. Supp. 3d 920, 929 (N.D. Ill. 2016), *aff'd*, 861 F.3d 661 (7th Cir. 2017).  The USPA's bylaws, when taken as a whole and not out of context (as the USPA reads them), giving the Board of Governors' authority relative "Member conduct off the field" cannot be reasonably interpreted to allow the USPA to police its members anywhere, everywhere, and at any given time for any conduct whatsoever.

Moreover, the complaint against Plaintiff was not properly brought. According to the USPA Disciplinary Procedures Policy, a complaint must be brought by a USPA member who "witnessed" the alleged conduct violation. AC Exhibit B.  In this instance, the complaint was brought by a USPA member who did not observe the alleged conduct violation in person or via video, livestream, or similar technology, either contemporaneously or after it occurs, as required under the DPP.  *Id*. .  The USPA member (Burner) who brought the complaint against Plaintiff based the complaint solely on hearing about the alleged conduct violation from the Minor and his parents.  While the USPA takes great pains to illustrate how a complaint *could* have been properly brought against Plaintiff, the fact remains that those hypothetical scenarios did not take place here.

As mentioned above, the Court must construct the contract between the USPA and Plaintiff according to the words' plain and ordinary meaning. *See Lexington Ins. Co.*, *supra*.

### ii.      The USPA violated its policies and procedures.

In addition to the USPA lacking jurisdiction to hold the disciplinary hearing as to Plaintiff, the USPA violated its policies and procedures by arbitrarily applying them without due notice. *See* AC ¶ 63(a)-(i). "Court's may set aside an organization's interpretation of its own constitution, bylaws, and other promulgations if the interpretation is unreasonable or patently unreasonable." *Diamond v. United Food & Com. Workers Union Loc. 881*, 329 Ill. App. 3d 519, 526, 768 N.E.2d 865, 871 (2002) (citing *Air Wisconsin Pilots Protection Committee v. Sanderson,* 909 F.2d 213, 218 (7th Cir.1990)). A federal court will defer to an organization's interpretation of its bylaws unless it is unreasonable, and an Illinois court will defer to an organization's interpretation of its bylaws if the interpretation is arbitrary. *Id*. Realistically, "[t]here is little difference between Illinois law and federal law regarding the deference to which an [organization] is entitled when it interprets its own constitution or bylaws." *Diamond*, *supra*, at 526.

Here, Plaintiff has alleged that the USPA's interpretation of its constitution, bylaws, and other promulgations is arbitrary. This was evidenced at the disciplinary hearing as the USPA hearing officers applied its rules in a manner that was different for Plaintiff and his witnesses when compared to how the rules were applied to other witnesses. *See* AC ¶ 63 a-i. Moreover, the USPA applied its rules arbitrarily as it relates to accepting an improperly brought complaint against Plaintiff and conducing a hearing without jurisdiction. *See* Section II, C, i., *supra*. Therefore, the Court should not defer to the USPA's interpretation of its constitution, bylaws, and other promulgations rather it should intervene in this matter.

### iii.      The USPA breached good faith and fair dealing.

The USPA would like this Court to believe that the implied covenant of good faith and fair dealing is inapplicable to the case at bar. Such a position is nonsensical. In fact, the very case cited by the USPA states explicitly that "[t]he duty of good faith and fair dealing is implied in every contract and requires a party vested with contractual discretion to exercise it reasonably, and not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of parties." *Seip v. Rogers Raw Materials Fund, L.P.*, 408 Ill. App. 3d 434, 443 (2011).

The Plaintiff here has explicitly alleged in his Amended Complaint that the USPA applied the contract between the USPA and Plaintiff in a manner that was arbitrary, capricious, inconsistent with the reasonable expectations of the parties. *See* AC ¶ 64. Indeed, Plaintiff has alleged that the USPA did not exercise its powers in conformity with its own rules.

### iv.   Plaintiff has alleged cognizable damages due to USPA's violation of its constitution, by-laws and rules.

The remedy for Plaintiff's breach of contract claims is governed by Virginia law. *See Knapp*, *supra*. Under Virginia law, there are two broad categories of cognizable contract damages: direct (or general) damages and consequential (or special) damages. *William H. Gordon Assocs., Inc. v. Heritage Fellowship, United Church of Christ*, 291 Va. 122, 150 (2016). "[D]irect damages are those which arise "naturally" or "ordinarily" from a breach of contract; they are damages which, in the ordinary course of human experience, can be expected to result from a breach. Consequential damages are those which arise from the intervention of "special circumstances" not ordinarily predictable. If damages are determined to be direct, they are compensable. If damages are determined to be consequential, they are compensable only if it is determined that the special circumstances were within the "contemplation" of both contracting parties." *Id*.

In the case at bar, Plaintiff has adequately alleged that his damages are cognizable direct damages. Specifically, Plaintiff's severe emotional distress in the way of sleeplessness, anxiety,

depression, marital problems, fear for the loss of his job, and attorney fees and costs are in the ordinary course of human experience and can reasonably be expected to result from a breach of contract.  This is especially true given the severity of the USPA's breach of contract and blatant disregard of its own governing documents to which it was bound.  *See Moorehead v. State Farm Fire & Cas. Co.*, 123 F. Supp. 2d 1004, 1006–07 (W.D. Va. 2000) (A plaintiff may recover for emotional disturbances for a breach of contract claim where the contract or the breach is of such a kind that serious emotional disturbance was a particularly likely result).

Even if this Court determines that Plaintiff has only alleged consequential damages, the USPA knew that its actions (i.e., defaming Plaintiff and holding a disciplinary hearing without jurisdiction) would result in the damages being claimed by Plaintiff, and thus such damages were within the parties' contemplation at the time the contract was made.  *See Long v. Abbruzzetti*, 254 Va. 122, 127(1997) ("'Contemplation,' in this context, includes both circumstances that are actually foreseen and those that are reasonably foreseeable").

### D.      Defendant did not afford Plaintiff due process.

The USPA did not afford Plaintiff due process at the disciplinary hearing.  The lack of due process afforded to Plaintiff is as problematic under both Virginia and Illinois laws.

Under Virginia law, in reviewing a disciplinary action of an organization, courts may inquire "whether the member was given reasonable notice of the hearing of the charge against him, whether he was afforded an opportunity to be heard, and whether the hearing [] [was] in good faith."  *Gottlieb v. Econ. Stores, Inc.*, 199 Va. 848, 857–58 (1958).

Here, Plaintiff was not given reasonable proper notice of the hearing and he received no clarity about the vague and unclear rules and policies that would apply to the hearing when he asked the USPA.  Moreover, Plaintiff was not afforded a full opportunity to be heard and the

hearing was in bad faith given the arbitrariness of the proceeding.  AC ¶ 42, 63, 64.  Therefore, Plaintiff has adequately alleged that he was not afforded due process under Virginia law.

Under Illinois law, "one subjected to [] [disciplinary proceedings of voluntary associations] should be accorded a hearing before a fair and impartial tribunal.  To hold otherwise would be a denial of essential rights."  *Van Daele v. Vinci*, 51 Ill. 2d 389, 394–95 (1972).  In *Van Daele*, the court found that plaintiffs, who were members of a voluntary organization, were denied due process at their disciplinary hearings because significant personality differences played a large part in the actions which were taken and therefore certain members of the Board were not impartial. Moreover, the strong possibility that an important economic interest of the plaintiffs was affected by an improper administrative proceeding gives the court power and the duty to act.  *Id*.

Similarly, here the USPA denied Plaintiff of essential rights because the disciplinary hearing was not fair and impartial.  For example, during the  hearing there was no threat of repercussions for violating the truth oath, the rules of evidence were applied randomly and prejudicially towards Plaintiff, Plaintiff was unable to fully cross examine the Minor, the USPA asked inappropriate leading questions to the Minor, Plaintiff was forced to end his defense without presenting all of his character witnesses or their full testimony, the hearing was unnecessarily held on Zoom and scheduled without consultation with Plaintiff, the USPA did not protract the hearing, the USPA allowed the Minor and his parents to turn off their camera during the hearing, and the USPA failed to give Plaintiff due notice of the rules to be applied at the hearing.  *See* AC ¶ 63.

These examples adequately allege that the USPA failed to provide Plaintiff with due process during the hearings.  Simply put, Plaintiff did not receive adequate notice of the charges or a full opportunity to defend, and there was no evidence to support the charges.  *See Butler v. USA Volleyball*, 673 N.E.2d 1063, 1065 (Ill. App. Ct. 1996) (declaring that a "fair hearing"

24

assumes adequate notice of the charges, an opportunity to defend, and the presentation of some evidence to support the charges). Indeed, the examples of the lack of due process afforded to Plaintiff go even further than the mere "significant personality differences" that the *Van Deale* Court determined was sufficient to prove impartiality. Even though the USPA ultimately concluded that there was insufficient evidence to sanction Plaintiff, it is not inconsequential that the USPA did not fully exonerate Plaintiff or explicitly reject the Minor's testimony as it should have. The failure to do so was not harmless and Plaintiff continues to suffer harm.

### E.      Economic necessity is not required under Illinois law.

Mr. Gaebel does not have to plead an economic necessity to warrant judicial intervention. Defendant's assertion that "a voluntary association can be held liable for denial of due process only if its action substantially impaired an "important economic interest" of its member" (MTD at 24) is wrong and unsupported by its own cited cases. A court may exercise jurisdiction over such matters where the plaintiff has alleged "mistake, fraud, collusion or arbitrariness." *See Finn v. Beverly Country Club*, 289 Ill. App. 3d 565, 568, 683 N.E.2d 1191, 1193 (1997). Here, Mr. Gaebel has alleged that Defendant arbitrarily applied its constitution and bylaws in its dealing with Mr. Gaebel, and as such, Plaintiff need not allege in his Amended Complaint that he has been deprived of a particular economic interest.

### F.      Plaintiff suffered an actionable deprivation.

Plaintiff suffered actionable deprivation at the hands of the USPA. Due process must be provided before depriving a person of life, liberty, or property. *Hickombottom v. City of Chicago*, 739 F. Supp. 1173, 1180 (N.D. Ill. 1990). Here, the USPA deprived Plaintiff of his liberty and property interest. Plaintiff has a property interest in retaining his membership with the USPA. According to the USPA's website, the USPA is the "the official governing body of the sport of

polo in the United States." Uspolo.org (last visited March 31, 2022).  Therefore, in order to participate in polo matches or events organized by the USPA, USPA membership is required.[7]

"A plaintiff may prove a deprivation of a liberty interest by showing damage to his good name, reputation, honor, or integrity."  *Omosegbon v. Wells*, 335 F.3d 668, 675 (7th Cir. 2003) (internal citations omitted).  Individuals are also afforded "the liberty to follow a trade, profession, or other calling."  *Meer v. Graham*, 524 F. Supp. 2d 1044, 1052 (N.D. Ill. 2007) (internal citations omitted).

By bringing unsubstantiated charges against Plaintiff and failing to fully exonerate Plaintiff in its Final Order, the USPA damaged Plaintiff's good name, reputation, honor, and integrity.  As alleged in the Amended Complaint, because of this deprivation of liberty interest, others in Plaintiff's community may assume that he is truly is a racist who bullies children.  AC ¶ 42.  Furthermore, because the USPA permitted and perpetuated Plaintiff's defamation at the disciplinary hearing, the Minor who accused Plaintiff of the wrongdoing subsequently bragged to people in the community that he and his family were going to get Plaintiff fired from his job.  Therefore, the lack of due process at the USPA's disciplinary hearing has deprived Plaintiff of his property and liberty interest and detrimentally impacted Plaintiff's personal and professional life.

### III.     Plaintiff plausibly pled a claim of intentional infliction of emotional distress.

To state a claim for intentional infliction of emotional distress ("IIED") under Virginia law, a plaintiff must allege that (1) the defendant's conduct was intentional or reckless; (2) the defendant's conduct was outrageous or intolerable; (3) the defendant's conduct caused the

---

[7]     Although all polo players in the United States are not required to register with the USPA, playing at USPA sponsored tournaments has significant benefits, including opportunities to win cash prizes.  Mr. Gaebel plays at USPA sponsored tournaments throughout the year and is required to be a USPA member to participate in those tournaments.  However, his involvement in the July 10 exhibition was unrelated to his USPA membership.  The July 10 exhibition was not a USPA sponsored events and involved several non-USPA members at a non-USPA club.

plaintiff's emotional distress; and (4) the plaintiff's distress was severe. *Perk v. Worden*, 475 F. Supp. 2d 565, 570 (E.D. Va. 2007). Defendant exaggerates the pleading requirements for an IIED claim in federal court. Plaintiff's IIED claim must simply meet the pleading standard under the Federal Rules, not the heightened standard required by Virginia state courts. *Hatfill v. New York Times Co.*, 416 F.3d 320, 336-37 (4th Cir. 2005); *see also Daniczek v. Spencer*, 156 F. Supp. 3d 739, 758 (E.D. Va. 2016) (noting that "the Fourth Circuit requires federal courts applying Virginia law to apply laxer standards of pleading [an IIED claim] than Virginia requires in its own state courts."). Plaintiff has pled all the elements of an IIED claim as required by Fed. R. Civ. P. 8.

### A. Defendant USPA's conduct recklessly caused Plaintiff severe emotional distress.

A defendant may "inflict emotional distress recklessly if he takes an action without regard to the risk of causing emotional distress to a victim when he *knew or could have been expected to know of the risk*." *Williams v. Agency, Inc.*, 997 F. Supp. 2d 409, 414 (E.D. Va. 2014)(emphasis added). Contrary to its assertions, Defendant's actions went beyond "merely intentionally conducting the disciplinary hearing," *see* MTD at 28; rather, its actions emboldened the Minor to continue spreading his falsehoods to others within the polo community. *See* AC ¶41. Defendant USPA knew or should have known that issuing a Notice without jurisdiction (AC ¶16), including false allegations that multiple witnesses would testify that Plaintiff used the racial slur in the Notice (AC ¶19), mischaracterizing the available evidence listed in its Notice (AC ¶¶19-23), threatening Plaintiff with suspension from the organization and a possible fine of more than $20,000 (AC ¶25), conducting a biased disciplinary hearing (AC ¶¶26-36) and failing to reject the Minor's defamatory allegations (despite there being no corroborating evidence whatsoever) (AC ¶37) would cause Mr. Gaebel severe emotional distress. Defendant's actions gave credence and further published the Minor's false allegation that Mr. Gaebel used a racial slur and, thus, warrant a conclusion that its

recklessness caused Mr. Gaebel's severe emotional distress. *See, e.g., Sanford v. Virginia*, No. CIV. A. 3:08CV835, 2009 WL 2447959, at *3 (E.D. Va. July 28, 2009) (finding sufficient allegations of intent where defendants recklessly caused plaintiffs' emotional distress by spreading misinformation about the death of plaintiffs' loved one while trying to protect their employer).

### B.    Defendant USPA's conduct was outrageous or intolerable.

Although Virginia state courts have held that "insensitive" and "demeaning" conduct alone do not rise to the level of outrageousness or intolerableness required to state an IIED claim, outrageous or intolerable conduct can be established where an individual engages in a multifaceted campaign of misconduct against the plaintiff. *See Daniczek v. Spencer*, 156 F. Supp. 3d 739, 761 (E.D. Va. 2016) (concluding that defendant's "prolonged, vindictive, and multifaceted campaign of misconduct rose to the level of 'outrageous and intolerable' conduct going 'beyond all possible bounds of decency' by taking into account the methods by which he went about the misconduct, the duration and repeated character of the misconduct, and the fact that much of his misconduct occurred while he wore the authoritative mantle of Commonwealth's Attorney."). "Where reasonable men may differ, it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability." *Perk v. Worden*, 475 F. Supp. 2d 565, 570–71 (E.D. Va. 2007) (citations omitted).

Defendant USPA's conduct towards Mr. Gaebel was outrageous and intolerable, causing Plaintiff to be perceived as a racist within the polo community. As outlined in detail above, Defendant used its apparent authority over Plaintiff to, among other things, knowingly publish false allegations against Mr. Gaebel, make these false allegations available to all its members upon request, threaten Mr. Gaebel with suspension from the organization as well as a possible fine of more than $20,000, and emboldened the Minor to continue to spread defamatory information about

Plaintiff to members of the polo community.  Defendant's publications of the Minor's false allegations were without regard for the truth as it subsequently included in its Final Order that it did not reject the Minor's testimony (even though there was no corroborating evidence); therefore, Defendant's conduct, here, should be deemed outrageous and intolerable.  *See Gilmore v. Jones*, 370 F. Supp. 3d 630, 680–81 (W.D. Va. 2019) (concluding that plaintiff plausibly alleged outrageous and intolerable conduct where defendants portrayed plaintiff as a member of a "deep state" conspiracy who helped orchestrate violence in Charlottesville and filmed a man attack protestors with his vehicle for the purpose of undermining a sitting president and the "alt-right.").

### C.    Mr. Gaebel continues to suffer from severe emotional distress.

Plaintiff plausibly stated that his emotional distress is severe.  Defendant seeks to curtail Plaintiff's IIED claim with the heightened pleading requirement based solely on Virginia state courts cases.  *See* MTD at 29 (citing *Harris v. Kreutzer*, 624 S.E.2d 24 (Va. 2006), *Russo v. White*, 400 S.E.2d 160 (Va. 1991) and *Cole v. JNO. Oakey*, 2019 WL 3955802, at *5 (Va. Cir. Ct. 2019)). Defendant's reliance on these Virginia state court cases is misguided because Fourth Circuit courts have found a plaintiff's simple allegation of severe emotional distress is sufficient to state an IIED claim.  *See, e.g., Daniczek*, 156 F. Supp. 3d at 759 (concluding plaintiff pled severe emotional distress with sufficient particularity under the Fourth Circuit's pleading requirement when she alleged "financial harm, harm to her professional reputation, stress, clinical anxiety and depression, mood swings, and insomnia."); *Sanford v. Virginia*, No. CIV. A. 3:08CV835, 2009 WL 2447959, at *4 (E.D. Va. July 28, 2009) (finding that the severity pleading requirement was met where defendant's actions "caused the [p]laintiffs to suffer a variety of negative emotions, 'physical sickness,' 'loss of sleep,' and 'loss of the enjoyment of life.'").  Mr. Gaebel has alleged that he continues to suffer from severe anxiety, reputational harm, sleeplessness, marital strife, fear

that he may lose his job as a government contractor due to Defendant's actions.  AC ¶¶42,73.  Mr. Gaebel has met the severity element of an IIED claim.

**D.      Defendant USPA's actions caused Mr. Gaebel's severe emotional distress.**

There is a causal connection between Mr. Gaebel's severe emotional distress and Defendant's outrageous conduct.   Defendant argues that "the only plausible inference [from Plaintiff's Amended Complaint] is that Mr. Gaebel's distress was caused by the underlying accusation [by the Minor, his parents and Burner], not by the USPA's conduct,"  MTD at 30. However, a defendant need not be the sole cause of the emotional distress, rather, a plaintiff can establish the requisite causal connection by plausibly alleging that the defendant's action contributed to his emotional distress. *See Sanford v. Virginia*, No. CIV. A. 3:08CV835, 2009 WL 2447959, at *4 (E.D. Va. July 28, 2009) (finding that the IIED causation element was met where plaintiffs alleged that the defendants' improper actions significantly increased the emotional distress).  Therefore, Defendant USPA cannot escape liability here because its actions (*See* Section III A & C) undoubtedly caused or, at minimum, significantly contributed to Mr. Gaebel's severe emotional distress.  As such, Mr. Gaebel has met the causation element of an IIED claim.

## CONCLUSION

Plaintiff has alleged actionable claims against Defendant and his claims should not be dismissed. Plaintiff's Amended Complaint provides a short and plain statement of the claims showing that  he is entitled to relief, and he has given Defendant fair notice of what the claims are and the grounds upon which they rest. *See Twombly*, *supra*.

Respectfully Submitted,


/s/ Skyler R. Peacock
Mark Dycio (VSB No. 32741)
T. Wayne Biggs (VSB No. 41281)
Skyler R. Peacock (VSB No. 87894)
John Spurlock-Brown (VSB No. 88015)
*Attorney of Record* (local counsel)
Dycio & Biggs
10533 Main Street, Fairfax VA 22030
mdycio@dyciolaw.com
twbiggs@dyciolaw.com
speacock@dyciolaw.com
jspurlockbrown@dyciolaw.com
Tel: (703) 383-0100
Fax: (703) 383-0101


Quendale G. Simmons (*Pro Hac Vice*)
Butzel Long, P.C.
150 W. Jefferson Ave., Ste 100
Detroit, MI 48226
simmonsq@butzel.com
Tel: (313) 225-7000
Fax: (313) 225-7080


Thomas Bick
Jude Nwaokobia (*Pro Hac Vice*)
Butzel Long, P.C.
1909 K. Street N.W., Ste. 500
Washington, DC, 20006
nwaokobia@butzel.com
Tel: (202) 454-2800
Fax: (202) 454-2856


*Counsel for Plaintiff*

31

**CERTIFICATE OF SERVICE**

I certify that on the 1st day of April, 2022, a copy of the foregoing Plaintiff's Opposition to Defendant's Motion to Dismiss Plaintiff's Amended Complaint Under Federal Rule of Civil Procedure Complaint 12(b)(6) was electronically filed and served on all counsel of record through this Court's electronic filing system.

/s/ Skyler R. Peacock_____