**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| DARRELL GAEBEL, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | CIVIL ACTION NO.:  1:22-CV-00141 |
| UNITED STATES POLO | ) | (LMB/JFA) |
| ASSOCIATION, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT UNITED STATES POLO ASSOCIATION'S**
**REPLY BRIEF IN FURTHER SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S**
**AMENDED COMPLAINT UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ................................................................................................. iii

**PRELIMINARY STATEMENT** ........................................................................................... 1

**ARGUMENT** ........................................................................................................................ 2

    I.    Gaebel has not identified any actionable statements, has not defeated the USPA's qualified privilege, and has not adequately pled publication under governing federal law. ................................................................................. 2

        A.    The USPA made no actionable statements. ...................................................... 2

            i.    The Notice contains no false statement or defamatory implication. ...................... 2

            ii.    The Final Order does not imply that Gaebel directed a racial epithet at Siddiqui. ...................................................................................... 3

            iii.    The disciplinary hearing does not give rise to liability for republication of defamation. .................................................................... 4

            iv.    None of the alleged conduct amounts to defamation per se. ........................... 5

        B.    The USPA's statements are privileged as a matter of law. .................................... 6

        C.    Gaebel has not adequately alleged publication of actionable statements to third-parties outside of the qualified privilege. ............................................... 7

    II.    The USPA's conduct of the disciplinary proceeding was consistent with its constitution, by-laws, and rules and, even if it weren't, Gaebel has alleged no cognizable damages. ......................................................................... 8

        A.    Illinois law governs the USPA's internal affairs, including claims arising under its constitution, by-laws, and rules. ....................................................... 8

        B.    The USPA followed its constitution, by-laws, and rules. ...................................... 9

            i.    The USPA had jurisdiction over Gaebel. ..................................................... 10

            ii.    The USPA did not violate its policies and procedures. ................................. 11

            iii.    The USPA did not breach its duty of good faith and fair dealing. ................ 12

        C.    The USPA afforded Gaebel due process. ........................................................... 13

            i.    Due Process is not implicated because membership in the USPA is not an economic necessity. .......................................................................... 13

            ii.    The USPA provided due process to Gaebel. ................................................. 14

            iii.    Gaebel suffered no actionable deprivation. ................................................. 15

        D.    Even if the USPA had violated its constitution, by-laws, or rules, Gaebel's claims would still fail for lack of cognizable damages. ........................................ 16

    III.    Gaebel has not adequately alleged intentional infliction of emotional distress. ......... 17

        A.    Virginia law of intentional infliction of emotional distress. ................................. 17

         B.    Gaebel has not alleged that the USPA acted intentionally or recklessly to inflict severe emotional distress. .............................................................. 18

i

C.     The USPA's conduct was not "outrageous or intolerable." ................................. 18

D.     Gaebel has not alleged that his emotional distress was "severe" enough to state a claim for IIED. ........................................................................................... 19

E.     Gaebel has not adequately alleged causation. ...................................................... 20

**CONCLUSION** ........................................................................................................................ 20

# TABLE OF AUTHORITIES

**Cases**

*Blackshire v. NAACP,*
   673 N.E.2d 1059 (Ill. App. Ct. 1996) ....................................................... 10

*Butler v. USA Volleyball,*
   673 N.E.2d 1063 (Ill. App. Ct. 1996) ............................................... 14, 15

*Carter v. Dominion Energy, Inc.,*
   529 F. Supp. 3d 525 (W.D. Va. 2021) ......................................................... 4

*Cashion v. Smith,*
   749 S.E.2d 526 (Va. 2013) ........................................................................... 7

*Daniczek v. Spencer,*
   156 F. Supp. 3d 739 (E.D. Va. 2016) .................................................. 18, 19

*Daniel v. Wells Fargo Bank,*
   2013 WL 5723704 (E.D. Va. 2013) ............................................................ 18

*Douglas v. Sentel Corp.,*
   2020 WL 4747783 (E.D. Va. Mar. 11, 2020) .............................................. 5

*Dragulescu v. Va. Union Univ.,*
   223 F. Supp. 3d 499 (E.D. Va. 2016) ........................................................... 7

*Echo, Inc. v. Whitson Co.,*
   121 F.3d 1099 (7th Cir. 1997) .................................................................... 12

*Fairfax v. CBS Broad. Inc.,*
   534 F. Supp. 3d 581 (E.D. Va. 2020) ..................................................... 3, 6

*Fairfax v. CBS Corp.,*
   2 F.4th 286 (4th Cir. 2021) ........................................................................... 3

*Finn v. Beverly Country Club,*
   683 N.E.2d 1191 (Ill. App. Ct. 1997) ........................................................ 14

*Fuste v. Riverside Healthcare Ass'n, Inc.,*
   265 Va. 127 (2003) ....................................................................................... 8

*Gilmore v. Basic Industries, Inc.,*
   233 Va. 485 (1987) ..................................................................................... 16

*Gilmore v. Jones,*
   370 F.Supp.3d 630 (W.D. Va. 2019) ..................................................... 4, 19

*Goulmamine v. CVS Pharmacy, Inc.*
   138 F. Supp. 3d 652 (E.D. Va. 2015) ........................................................... 7

*Harris v. Kreutzer,*
   624 S.E.2d 24 (Va. 2006) ........................................................................... 19

*Isle of Wight County v. Nogiec*,
    704 S.E.2d 83 (Va. 2011) ................................................................. 17

*Lambert v. Whiting Turner Contractor*,
    2016 WL 2946176 (E.D. Va. May 19, 2016) ...................................... 6

*Lee v. Dong-A Ilbo*,
    849 F.2d 876 (4th Cir. 1988) ........................................................ 3, 5

*Lee v. Snyder*,
    673 N.E.2d 1136 (Ill. App. Ct. 1996) ............................................. 14

*Lokhova v. Halper*,
    441 F.Supp.3d 238 (E.D. Va. 2020) .................................................. 3

*Long v. Abbruzzetti*,
    487 S.E.2d 217 (Va. 1997) ............................................................. 17

*Meer v. Graham*,
    524 F. Supp. 2d 1044 (N.D. Ill. 2007) ............................................ 15

*Montgomery v. Scialla*,
    2020 WL 6565239 (N.D. Ill. 2020) ................................................. 11

*Moorehead v. State Farm Fire & Cas. Co.*,
    123 F. Supp. 2d 1004 (W.D. Va. 2000) ............................................ 17

*Nat. Ass'n of Sporting Goods Wholesalers v.
    FTL Mktg. Corp.*,
    779 F.2d 1281 (7th Cir. 1985) ..................................................... 9, 13

*Omosegbon v. Wells*,
    335 F.3d 668 (7th Cir. 2003) .......................................................... 15

*Perry v. Isle of Wight Cty.*,
    2016 WL 1601195 (E.D. Va. 2016) ................................................... 5

*Prewett Enterprises, Inc. v. Grand Trunk W. R.R. Co.*,
    2019 WL 6310495 (N.D. Ill. Nov. 25, 2019) ................................... 13

*Rosenstock v. Sollars*,
    2018 WL 5808471 (N.D. Ill. 2018) ................................................. 16

*Sanford v. Virginia*,
    2009 WL 2447959 (E.D. Va. July 28, 2009) ....................... 18, 19, 20

*Seip v. Rogers Raw Materials Fund*,
    948 N.E.2d 628 (Ill. App. Ct. 2011) ............................................... 12

*Tronfeld v. Nationwide Mut. Ins. Co.*,
    636 S.E.2d 447 (Va. 2006) ............................................................... 6

*Van Daele v. Vinci*,
    282 N.E.2d 728 (Ill. 1972) .............................................................. 14

*Williams v. Commonwealth*,
    450 S.E.2d 365 (Va. 1994) ............................................................... 6

iv

*Wynn v. Wachovia Bank, N.A.*,
    2009 WL 1255464 (E.D. Va. 2009).............................................................................. 7

*Yahya v. Barr*,
    2021 WL 798873 (E.D. Va. Jan. 19, 2021) ..................................................... 12, 16

**Rules**

Fed. R. Civ. P. 81(c)(1)............................................................................................... 9

Rule 12 ....................................................................................................................... 19

**PRELIMINARY STATEMENT**

As Defendant United States Polo Association (the "USPA") observed in its opening brief, Plaintiff Darrell Gaebel has acknowledged that the allegations underlying the USPA disciplinary hearing at issue here were disturbing and would warrant strong action if they were true. (PX E at 33.[1]) Gaebel has never asserted otherwise. And in neither his Amended Complaint nor his opposition brief does Gaebel offer a reason—much less plausible allegations—why the USPA would conduct a "sham" disciplinary hearing, as he has asserted. (MTD at 5.) He has also never offered a reason or plausible allegations as to why the USPA would proceed with a hearing if it knew, as he has asserted, that the underlying allegations were false. (*Id.* at 12.) Nor why, as he has asserted, the USPA would engage in a multifaceted campaign of misconduct against him. (*Id.* at 28.) The USPA did none of these things, and Gaebel's Amended Complaint raises no plausible inference to the contrary.

The Amended Complaint should be dismissed in its entirety.  As the USPA set out in its opening brief, each of Gaebel's claims is incurably deficient. Gaebel's defamation claim tortures the language of the statements that the claim arises from—to the extent it arises from statements at all. His contract-based claims seek non-cognizable damages for non-existent breaches. And his intentional infliction of emotional distress claim fails on every element.

Gaebel's opposition to the USPA's Motion to Dismiss does not advance his cause. Many of the cases he cites undermine the positions he advances, denying the relief he seeks here. And the remainder of his cases are readily distinguishable. The Amended Complaint should be dismissed with prejudice.

---

[1] "MTD" refers to Defendant's Memorandum in Support of Motion to Dismiss (Dkt. 22). "Pl. Br." refers to Plaintiff's Memorandum in Opposition (Dkt. 28). Gaebel's Amended Complaint is cited as "AC"; exhibits to the Amended Complaint are cited with the prefix "PX"; exhibits to the USPA's motion to dismiss are cited with the prefix "DX."

**ARGUMENT**

**I.    Gaebel has not identified any actionable statements, has not defeated the USPA's qualified privilege, and has not adequately pled publication under governing federal law.**

In its opening brief, the USPA established that Gaebel's defamation claim fails because Gaebel has not alleged the publication of any actionable statements and, even if he had, the statements are privileged. (MTD at 7-15.) Gaebel's responses fail.

**A.    The USPA made no actionable statements.**

To state a claim for defamation under Virginia law, a plaintiff must allege an actionable statement—i.e., a statement that is both false and defamatory. (MTD at 7.) Gaebel has not.

**i.    The Notice contains no false statement or defamatory implication.**

In its opening brief, the USPA established that the Notice did not contain any false statements of fact because it stated—accurately—that Gaebel had been *alleged* to have bullied and directed a racial epithet at Siddiqui. (MTD at 8-9; PX C at 1.) Gaebel's arguments to the contrary depend on an unnatural, non-contextual reading of the Notice, and an unsupported take on the law. The Court should reject them.

Gaebel begins by arguing that the Notice defamed him by mischaracterizing the evidence against him because—he asserts—it suggested that each witness and each piece of evidence would, in isolation, establish the charges against him. (Pl. Br. at 10-11.) This argument ignores the law the USPA cited in its opening brief. Allegedly defamatory statements must be considered in their whole context. No reasonable reader of the Notice, including the exhibits that expressly identify exculpatory evidence, would draw the conclusion that Gaebel advances. Instead, any reasonable reader of the notice would understand that the USPA was summarizing the evidence and that certain evidence would be offered for background or context. (MTD at 9.)

Gaebel next reaches for the inapposite "republication" doctrine, relying on dicta in *Lee v. Dong-A Ilbo*, 849 F.2d 876, 878 (4th Cir. 1988) for the proposition that one who "repeats" a defamatory statement is as liable as the original defamer based on the legal fiction that "the republisher adopts the defamatory statement as his own." (Pl. Br. at 12.) But the "republication rule" does not create liability for Burner's statements. As a threshold matter, Gaebel cites no controlling case that sets out a test for "republication." *Lee* turned on whether the defendant was entitled to dismissal based on qualified privilege, not on whether the defendant was liable for defamation under the republication doctrine. *Id.* And this Court's decision in *Lokhova v. Halper,* 441 F.Supp.3d 238, 254 (E.D. Va. 2020), rejected a republication claim, noting that republication claims typically apply to republication of the defendant's own comments. But even these cases provide enough insight into the doctrine for the Court to conclude that the USPA did not "republish" Burner's statements as its own: It treated Burner's statements as allegations that had not been proven. *Compare Lee v. Dong-A Ilbo*, 849 F.2d at 877 (defendant news agencies republished false reports issued by South Korean intelligence agencies), *with Fairfax v. CBS Broad. Inc.*, 534 F. Supp. 3d 581, 593 (E.D. Va. 2020) (no defamation liability where defendants reported on "accusations" against an individual but did not state that plaintiff "did in fact commit the alleged sexual assaults or that they believed he committed the assaults"), *aff'd sub nom. Fairfax v. CBS Corp.*, 2 F.4th 286 (4th Cir. 2021). Gaebel has not identified a single case extending republication liability to circumstances like those present here.

> ii. **The Final Order does not imply that Gaebel directed a racial epithet at Siddiqui.**

Gaebel concedes, as he must, that the Final Order is not defamatory on its face. (*Cf.* Pl. Br. at 14.) So he argues that the Final Order "implies" that the hearing officers did not believe Siddiqui was lying when he testified that Gaebel had called him a racial slur and that the USPA

3

believed Siddiqui's allegation was true. (*Id.*) Neither of the defamation-by-implication cases Gaebel cites overcome the arguments the USPA made in its opening brief. (MTD at 10-11.)

Rather than helping Gaebel, *Gilmore v. Jones*, 370 F.Supp.3d 630 (W.D. Va. 2019), highlights the strength of the defamatory implication necessary to state a claim for defamation-by-implication. In that case, the defendant implied that the plaintiff had knowledge of and participated in the violent attacks in Charlottesville in 2017 because he videotaped part of the attack, stating that plaintiff's conduct was "Waaaaaay too much coincidence" to have not been planned. *Id.* at 671. There is no comparable insinuation in the Final Order. To the contrary, the Final Order detailed and weighed all the evidence and expressly stated that the evidence was insufficient to find a violation had occurred. (*See* PX F at 4.)

*Carter v. Dominion Energy, Inc.*, 529 F. Supp. 3d 525 (W.D. Va. 2021) is of no more help to Gaebel. Gaebel highlights the *Carter* court's statement that "circumstances may arise where a statement that is facially true is still actionable." (Pl. Br. at 14.) But the court continued—in language Gaebel omits—that liability for defamation-by-implication can arise only if "'the statements conveyed [a] defamatory implication' intended by the speaker," limiting any implication to the "plain and natural" meaning of the words. *Carter*, 529 F. Supp. 3d at 540. The "plain and natural" meaning of the Final Order does not imply that Gaebel, in fact, uttered the racial epithet. And even if such a strained interpretation were plausible, there is no basis to conclude the USPA intended it.

### iii.   The disciplinary hearing does not give rise to liability for republication of defamation.

In its opening brief, the USPA argued that Gaebel's allegations that the disciplinary hearing "contributed to," "furthered," "perpetuated," or "gave credence to" the allegedly defamatory statements of other people, (AC ¶¶ 44 - 46) did not pass muster because he had not

alleged actionable publication of statements by the USPA. (MTD at 12.) In opposition, Gaebel argues that the hearing amounted to actionable republication of the allegations Notice. (Pl. Br. at 13.) This argument fails.

Gaebel again bases his "republication" argument on *Lee v. Dong-A Ilbo*, a qualified privilege case where defendant news agencies wholesale republished a press release published by a foreign news agency. 849 F.2d at 877. Even assuming *Lee* informs the republication analysis, the facts are readily distinguishable. Unlike in *Lee*, the USPA's never adopted Burner's or the Siddiquis' statements as its own without qualifying language. And Gaebel cites no authority for the proposition that the USPA "adopt[ed] their testimony as its own" by calling Burner and the Siddiquis to testify at the hearing. (Pl. Br. at 13.)

### iv.   None of the alleged conduct amounts to defamation per se.

None of the statements Gaebel relies on are actionable because they are all either true or are not capable of the meaning the Gaebel ascribes to them. So, whether the statements are defamatory per se is academic (which is why the USPA addressed the question in a footnote). Nevertheless, for completeness's sake, we address Gaebel's defamation per se arguments.

Gaebel argues that the USPA committed defamation per se because the statements at issue "prejudice Mr. Gaebel's profession and moral character." (Pl. Br. at 16.) Notably, Gaebel does not actually allege that Gaebel has been injured in his profession. But even had he, a statement that causes injury to a plaintiff in his or her profession does not constitute defamation per se unless the statements, unlike the statements here, are *about the plaintiff's skills in his profession. Perry v. Isle of Wight Cty.*, 2016 WL 1601195, at *3 (E.D. Va. 2016). Gaebel cites two cases that do not counsel otherwise—both involve statements about plaintiff's profession. *See Douglas v. Sentel Corp.*, 2020 WL 4747783, at *4 (E.D. Va. Mar. 11, 2020) (holding that false statement by plaintiff's prior employer about plaintiff's work history was actionable);

5

*Tronfeld v. Nationwide Mut. Ins. Co.*, 636 S.E.2d 447, 450 (Va. 2006) (sustaining defamation

claim where defendant allegedly stated that plaintiff, an attorney, "just takes people's money"

and that his clients "receive less for their claims because of the attorney's services").

Gaebel also argues that the USPA committed defamation per se by stating that Gaebel

pushed the minor's shoulder and slapped his upper arm, which can constitute assault and battery.

(Pl. Br. at 17 (stating that an accusation of a crime of moral turpitude can be actionable as

defamation per se.)) But the USPA never stated that Gaebel had committed that conduct; the

USPA stated that Gaebel had been alleged to have committed the conduct. This is a dispositive

distinction. *See, e.g.*, *Fairfax*, 534 F. Supp. 3d at 593.[2] And even if the Court were to credit the

assertion that the USPA had stated that Gaebel had pushed the minor's shoulder and slapped his

upper arm, misdemeanor batteries are not crimes of moral turpitude, so Gaebel's argument fails

on its own terms. *See Williams v. Commonwealth*, 450 S.E.2d 365, 375 (Va. 1994).

**B.    The USPA's statements are privileged as a matter of law.**

In its opening brief, the USPA established that even if Gaebel had alleged actionable

statements, his defamation claim would nevertheless fail because the USPA's statements to the

hearing participants and USPA members are subject to a qualified privilege applicable to

"communications between persons on a subject in which the persons have an interest or duty."

(MTD at 13.) Gaebel's arguments to the contrary each fail.

Gaebel begins by arguing that the qualified privilege does not capture the

communications here. (Pl. Br. at 14.) But the only case he cites never reached the scope of the

---

[2] Gaebel's attempts to add new allegations through his opposition brief should be ignored. (*See, e.g.*, Pl. Br. at 13 n.4 ("On information and belief, during its investigation . . .").) A plaintiff "may not rely on new allegations in a response to a motion to dismiss as a means of defeating the motion, and thus this Court cannot consider such statements." *Lambert v. Whiting Turner Contractor*, 2016 WL 2946176, at *6 (E.D. Va. May 19, 2016).

qualified privilege; the court dismissed for failure to allege a defamatory statement. *Dragulescu v. Va. Union Univ.*, 223 F. Supp. 3d 499, 507 (E.D. Va. 2016). Gaebel offers no substantive argument as to why the USPA's members *would not* have an interest in the outcome of disciplinary proceedings against fellow members. And the USPA has already shown that qualified privilege attaches to an organization's internal disciplinary matters. (MTD at 13.)

"In order to defeat a qualified privilege, Plaintiff must allege facts sufficient to support a finding by clear and convincing evidence that the statements were made with actual, common-law malice." *Wynn v. Wachovia Bank, N.A.*, 2009 WL 1255464 (E.D. Va. 2009). Neither of the cases Gaebel cites supports a finding of actual malice here. In *Cashion v. Smith*, the court simply noted four methods of establishing common law malice to overcome the qualified privilege; it did not find malice based on conclusory allegations like those Gaebel offers here. 749 S.E.2d 526, 533 (Va. 2013). And *Goulmamine v. CVS Pharmacy, Inc.* arose from a statement that a doctor caused a patient's overdose death; the court declined to dismiss as a matter of law because "making any statement about a doctor causing death-by-overdose without knowing whether it was true is so damning to a medical professional that it constitutes reckless disregard for the truth." 138 F. Supp. 3d 652, 665 (E.D. Va. 2015). These circumstances here are not analogous.

### C.    Gaebel has not adequately alleged publication of actionable statements to third-parties outside of the qualified privilege.

Finally, the USPA established that Gaebel has not adequately alleged the "publication" element of defamation because he has not alleged publication outside the qualified privilege. (MTD at 14.) In response, Gaebel does not even attempt to argue that he has adequately pled publication under federal law. (*Cf.* Pl. Br. at 16.) Instead, Gaebel relies on an inapposite Virginia state law case to excuse his failure to adequately plead publication. (Pl. Br. at 16.) This argument fails under FRCP 81(c)(1).

Under FRCP 81(c)(1), the Federal Rules of Civil Procedure apply to cases removed to civil actions removed from state court. And the applicable federal pleading standards require that a plaintiff adequately allege (in nonconclusory terms) that defamatory statements were published to third parties. (MTD at 14 (citing cases).) Gaebel has not met that standard. Gaebel's reliance on *Fuste v. Riverside Healthcare Ass'n, Inc.*, 575 S.E.2d 858 (Va. 2003)—which has never been cited by a federal court—is therefore misplaced.

Similarly, Gaebel's statement that the USPA "perpetuated" defamation by "making the Final Order—complete with the defamatory Notice—available to practically the entire association" does not satisfy the publication requirement. (Pl. Br. at 10.) This allegation is contradicted by the USPA rule Gabel relies on, which provides only that a *summary* be made available. (*See* MTD at 12 n.3, 15, 15 n.4.) The USPA attached the summary to its brief (DX 3), and Gaebel has not even attempted to argue that the summary is actionable.

## II. The USPA's conduct of the disciplinary proceeding was consistent with its constitution, by-laws, and rules and, even if it weren't, Gaebel has alleged no cognizable damages.

### A. Illinois law governs the USPA's internal affairs, including claims arising under its constitution, by-laws, and rules.

Notwithstanding clear authority to the contrary, Gaebel argues that Virginia law applies to claims arising out of the USPA's governing documents—apparently to avoid Illinois law limiting relief in the circumstances presented here. (Pl. Br. at 17-18.) Gaebel's arguments do not withstand the slightest scrutiny.

Gaebel's argument that it is "unlikely" that the USPA's members outside Illinois would contemplate the application of Illinois law (Pl. Br. at 18), is devoid of a choice of law analysis, and contrary to established Virginia choice-of-law principles governing controversies involving a corporation's internal affairs. (MTD at 16.)

8

Gaebel's suggestion that Illinois law should not apply because the alleged breaches do not actually involve the USPA's "internal affairs" (Pl. Br. at 18) fares no better. Courts routinely treat disciplinary disputes of voluntary associations as matters of a company's internal affairs. (MTD at 16 (citing cases).) And Gaebel is incorrect to characterize himself as a "effectively a USPA customer seeking to enforce the terms of his agreement." (*Id.* at 18.) Contrary to his assertions that his USPA membership does not provide him "the right to vote on matters involving the direction or organization of the USPA," the USPA constitution expressly provides voting rights for Registered Player Members related to the election of the Board of Governors. (PX A at Art. II.) And the USPA documents Gaebel seeks recovery under are plainly not—as Gaebel suggests—a consumer contract. A contract for what, Gaebel doesn't say: The purchase of a disciplinary hearing?

Illinois law thus governs the USPA's conduct of its internal disciplinary matters. And under Illinois law, voluntary associations have great discretion when conducting their internal affairs, as Gaebel concedes. (Pl. Br. at 13.) Courts applying Illinois law will not intervene in the internal affairs of a voluntary association unless the association (1) has violated its own charter, bylaws, or substantive law or (2) has failed to afford members "rudimentary due process." *Nat. Ass'n of Sporting Goods Wholesalers v. FTL Mktg. Corp.*, 779 F.2d 1281, 1285 (7th Cir. 1985). Here, neither condition is met.

### B.  The USPA followed its constitution, by-laws, and rules.

Gaebel argues that judicial intervention is warranted because the USPA allegedly (1) conducted a disciplinary hearing without jurisdiction over Gaebel, (2) moved forward with an improperly brought complaint against Gaebel and arbitrarily applied policies and procedures without due notice, and (3) arbitrarily interpreted the DPP and how to conduct disciplinary

hearings in breach of the implied covenants of good faith and fair dealing. (Pl. Br. at 19.) Each of these arguments fails as a matter of law.

### i.   The USPA had jurisdiction over Gaebel.

As set forth in the USPA's opening brief, the USPA's exercise of jurisdiction over Gaebel was consistent with its constitution and by-laws. (MTD at 17.) Gaebel argues in opposition that there was no jurisdiction because (1) the alleged incident did not take place at a USPA match or a USPA club and (2) the complaint "was not properly brought." (Pl. Br. at 20.) These arguments fail for the reasons stated in the USPA's opening brief, especially given the deference due to the USPA's interpretation of its own rules. *See Blackshire v. NAACP*, 673 N.E.2d 1059, 1061 (Ill. App. Ct. 1996) ("we must defer to the board's interpretation of its own constitution.").

In his opposition, Gaebel acknowledges that the USPA's by-laws expressly provide that the Board of Governors has the authority to impose disciplinary measures relating to conduct violations on the field, and Member conduct off the field. (DX 2 at 33.) He nevertheless argues that the rules "cannot be reasonably interpreted to allow the USPA to police its members anywhere, everywhere, and at any given time for any conduct whatsoever." (Pl. Br. at 20.) But this matter does not concern conduct anywhere and everywhere for whatever conduct. This matter concerns the USPA's discipline of a USPA member for conduct allegedly directed at another USPA member during a polo game—squarely within the USPA's jurisdiction. Gaebel's slippery-slope argument about the outer limits of the USPA's jurisdiction is academic.[3]

---

[3] Gaebel ignores the testimony of the USPA member Twilight Polo Club's USPA Delegate—one of Gaebel's own witnesses—who testified that the underlying events took place at an exhibition match run by Twilight Polo Club at an off-site location it had rented. (MTD at 18.)

Gaebel also argues that the USPA was without jurisdiction under the DPP because Burner was not a "witness" because she "did not observe the alleged conduct violation." (Pl. Br. at 20.) But as outlined in the Notice, the alleged conduct underlying the disciplinary charges consisted of incidents of foul and racial language in connection with an in-match collision and a post-match physical confrontation. (PX C at 1.) It is undisputed Burner observed the in-match collision, received a report from Siddiqui immediately following the match, and observed the post-match confrontation between Siddiqui and Gaebel. (PX C – Ex. 2; PX E at 22 – 24, 30 – 32, 34, 39, 45 – 46, 48 – 49; DX 4 ¶¶ 8 – 10.) She was therefore a witness for purposes of the DPP. The USPA advanced precisely this argument in its opening brief (MTD at 17-18), yet Gaebel ignores it in his opposition.

Nor does Gaebel dispute that the USPA could have brought a complaint based on the information it received from Burner and Siddiqui's mother on behalf of her minor son. (MTD at 18.) Gaebel's argument that "those hypothetical scenarios did not take place here" misses the point: If the complaint could have been lodged on the facts as alleged regardless of whether Burner was a "witness," then Gaebel's argument based on the DPP's "witness" requirement fails for lack of but-for causation. *Montgomery v. Scialla*, 2020 WL 6565239, * 4 (N.D. Ill. 2020) (contract claim dismissed for failure to adequately plead causation).

### ii.   The USPA did not violate its policies and procedures.

Gaebel argues that the USPA "violated its policies and procedures by arbitrarily applying them without due notice." (Pl. Br. at 21.) Specifically, Gaebel argues that the USPA hearing officers (1) "applied its rules in a manner that was different for Plaintiff and his witnesses" and (2) the USPA "applied its rules arbitrarily as it relates to accepting an improperly brought complaint against Plaintiff and conducing [sic] a hearing without jurisdiction." (Pl. Br. at 21.)

11

First, each of Gaebel's particular procedural or evidentiary complaints were addressed in the USPA's opening brief. (MTD at 20-22.) Gaebel does not rebut any of the USPA's arguments, instead continuing to argue in conclusory terms that any exercise of discretion was "arbitrary." (Pl. Br. at 21.) He has thus conceded these points. *See Yahya v. Barr*, 2021 WL 798873, at *2 (E.D. Va. Jan. 19, 2021) ("Because [plaintiff] has failed to address an argument made in a dispositive pleading, the Court must accept the argument as conceded.").

Second, as set out above, the USPA's decision to issue charges based on the Burner's complaint, corroborated by Siddiqui's mother's statement, was consistent with its own rules and an entirely reasonable exercise of discretion. *Cf. McCary v. Commonwealth*, 548 S.E.2d 239, (Va. App. Ct. 2001) (testimony of a single witness can sustain a criminal conviction; affirming conviction where evidence was "one man's word against another's").

### iii.    The USPA did not breach its duty of good faith and fair dealing.

Gaebel's claim for breach of the implied covenant of good faith and fair dealing ignores that "Illinois law does not recognize independent claims based on breaches of any implied duties of good faith." *Echo, Inc. v. Whitson Co.*, 121 F.3d 1099, 1105–06 (7th Cir. 1997) (affirming dismissal of breach of good faith counterclaim because plaintiff improperly pled it "standing alone as its own claim"). Gaebel's standalone claim for breach of the implied covenant (Count IV) must be dismissed on this basis.[4]

Even if Gaebel could maintain such a cause of action, Gaebel's claim for breach of the implied covenant fails for the same reason as his contract claims: As set out above, he has failed to allege arbitrary conduct by the USPA. (*See* MTD at 19-20.) To support his argument, Gaebel

---

[4] Gaebel cites a single case in support of this argument. (Pl. Br. at 22.) In that case, *Seip v. Rogers Raw Materials Fund*, 948 N.E.2d 628, 637 (Ill. App. Ct. 2011), the court dismissed the claim for breach of the implied covenant, stating—as the USPA argued in its opening brief—that the implied covenant "is not an independent source of duties for the parties to a contract."

relies on Paragraph 64 of the Amended Complaint, which alleges only in conclusory terms that the "arbitrary nature" of the proceeding impacted Gaebel's ability to defend himself—notwithstanding that the USPA found in his favor. (Pl. Br. at 22.) Gaebel identifies no facts to support his assertion that the USPA's "sole objective in issuing charges was to embarrass [him] and label him a bully and a racist" or that the USPA had a "predetermined narrative." (AC ¶ 23, ¶ 37.) Such conclusory allegations are insufficient. *See Prewett Enterprises, Inc. v. Grand Trunk W. R.R. Co.*, 2019 WL 6310495, at *7 (N.D. Ill. 2019) (plaintiffs "cannot baldly assert that the defendants are operating in bad faith; they must allege facts that plausibly support that claim.").

### C.   The USPA afforded Gaebel due process.

As noted above, Illinois courts may permit intervention in the internal affairs of a voluntary association if the association has failed to afford members "rudimentary due process" and the association's actions implicate an important economic interest. *Nat. Ass'n of Sporting Goods Wholesalers v. FTL Mktg. Corp.*, 779 F.2d 1281, 1285 (7th Cir. 1985). Here, due process is not implicated because membership in the USPA is not an economic necessity, and even if it were, the USPA afforded Gaebel due process. Gaebel's authorities do not help him.

### i.   Due Process is not implicated because membership in the USPA is not an economic necessity.

As set out in the USPA's opening brief, a voluntary association can be held liable for denial of due process only if its action substantially impaired an "important economic interest" of its member. (MTD at 24.) *See Austin v. Am. Ass'n of Neurological Surgeons*, 253 F.3d 967, 969 (7th Cir. 2001). A voluntary association's disciplinary proceedings do not implicate important economic interests where membership in the association is optional. *Id.*

Gaebel argues that he need not plead an "economic necessity" to warrant judicial intervention. (Pl. Br. at 25.) But the sole case he cites for that position, *Finn v. Beverly Country*

13

*Club*, dismissed a due process claim on economic necessity grounds. 683 N.E.2d 1191, 1193 (Ill. App. Ct. 1997). Here, the USPA did not deprive Gaebel of anything at all, much less an important economic interest. He prevailed at the hearing. And even if he'd been expelled from the USPA, expulsion from a voluntary sporting association does not implicate an economic interest. *Lee v. Snyder*, 673 N.E.2d 1136, 1139 (Ill. App. Ct. 1996) (holding that amateur hockey association's grievance procedures did not implicate an economic right).

### ii.    The USPA provided due process to Gaebel.

Even assuming Gaebel had established an economic necessity that entitled him to due process, his claim would still fail because he has not adequately alleged a denial of due process. Due process in the context of a voluntary association "does not require strict compliance with judicial standards of due process," and an accused member of a voluntary association is entitled only to a hearing before a fair and impartial tribunal, adequate notice of the charges, an opportunity to defend, and "some" evidence presented to support the alleged charges, all of which is satisfied here. *Butler v. USA Volleyball*, 673 N.E.2d 1063, 1065 (Ill. App. Ct. 1996).

Gaebel argues that there was insufficient due process because there was improper notice and that he was not afforded a full opportunity to be heard. (Pl. Br. at 23.) These arguments were addressed in the USPA's opening brief. (MTD at 25-26.) None of the cases Gaebel relies on support the conclusion that the hearing—at which Gaebel prevailed—did not provide adequate process.

Gaebel's reliance on *Van Daele v. Vinci*, 282 N.E.2d 728 (Ill. 1972), is misplaced. The *Vinci* court found "a strong possibility that plaintiffs were not given a fair hearing," because the majority of the individuals presiding over the disciplinary hearing had a conflict of interest arising from an ongoing lawsuit between the plaintiff and themselves. *Id.* at 394. No such conflict of interest is alleged here.

14

*Butler v. USA Volleyball* also weighs in the USPA's favor. The *Butler* court rejected the plaintiff's due process claim, stating that voluntary association disciplinary proceedings require only a hearing before a fair and impartial tribunal, adequate notice of the charges, an opportunity to defend, and "some" evidence presented to support the alleged charges. 673 N.E.2d at 1067. That standard is satisfied here. (MTD at 25-26.)

### iii.   Gaebel suffered no actionable deprivation.

Finally, even if Gaebel could show that he did not receive a fair hearing, his due process claim would still fail because he has not established that the alleged procedural infirmities resulted in a wrongful deprivation of life, liberty, or property. (*See* MTD at 26-27 (citing cases).) Gaebel has not overcome this obstacle.

Gaebel first argues that he suffered an "actionable deprivation" because he has "a property interest in retaining his membership with the USPA." (Pl. Br. at 25.) But even if that were true, any such property interest would not be implicated here because his membership was not revoked.

Gaebel next argues that he has a liberty interest in his "good name, reputation, honor, or integrity," which he claims has been damaged by the USPA's "failing to fully exonerate Plaintiff." (Pl. Br. at 26.) But the cases he relies on shows he is not entitled to relief on this basis. In *Omosegbon v. Wells*, 335 F.3d 668, 675 (7th Cir. 2003), the court held that there was no actionable deprivation where plaintiff—who had been terminated from his job—had not established that his employer's statements about his termination were both publicly disseminated and "sullied his moral character." Similarly, *Meer v. Graham*, 524 F. Supp. 2d 1044, 1050 (N.D. Ill. 2007), concerned a plaintiff's termination from his position as a public employee. Here, Gaebel prevailed at the hearing and was not expelled, suspended, or otherwise disciplined. So

15

even assuming expulsion from the USPA would implicate a protected interest, there would be no actionable deprivation because Gaebel was not expelled.

**D.     Even if the USPA had violated its constitution, by-laws, or rules, Gaebel's claims would still fail for lack of cognizable damages.**

Even if the USPA had violated a contractual duty to Gaebel, his contract-based claims should still be dismissed because he has not alleged cognizable damages. *Rosenstock v. Sollars*, 2018 WL 5808471, *3 (N.D. Ill. 2018) (dismissing contract claim where plaintiff pled damages not cognizable under contract law). As noted in the USPA's opening brief, Gaebel has alleged emotional damages and attorneys' fees. (MTD at 23-24; AC ¶¶ 59 – 60.) Neither of these categories of damage are cognizable under Illinois law.

Gaebel does not address the USPA's argument that attorneys' fees are not available under governing Illinois law absent a statutory or contractual provision to the contrary. (MTD at 24.) This is true under Virginia law as well. *See Gilmore v. Basic Industries, Inc.*, 233 Va. 485 (1987) (vacating award of attorneys' fees, noting, "[o]rdinarily, in the absence of a statutory or contractual provision to the contrary, attorneys' fees are not recoverable by the prevailing litigant."). Gaebel's failure to respond to the USPA's argument in his opposition waives his claim to these damages. *Yahya*, 2021 WL 798873, at *2.

Gaebel likewise does not address Illinois law concerning emotional damages, and his argument that emotional damages may be cognizable under Virginia law is unpersuasive. Gaebel argues that a narrow exception applies here to the rule that emotional damages are not cognizable on breach of contract claims. Specifically, he argues that, under Virginia law, a plaintiff may recover for emotional damages where the contract or breach is of such a kind that serious emotional disturbance was a particularly likely result. (Pl. Br. at 22.) Here, Illinois law applies, but the Virginia law exception would be inapplicable because there are no allegations supporting

16

the conclusion that the USPA's governing documents constitute a contract where emotional damages are likely to result. *See Isle of Wight County v. Nogiec*, 704 S.E.2d 83, 86 (Va. 2011) (evidence of embarrassment and humiliation did not support award of contract damages; "As a general rule . . . damages for breach of contracts are limited to the pecuniary loss sustained").

The cases Gaebel relies on lead to the opposite conclusion. In *Long v. Abbruzzetti*, 487 S.E.2d 217 (Va. 1997), the court held that "consequential" damages (including, presumably, emotional distress damages) are only available where special circumstances were within the contemplation of the parties "as of the time the contract was made." *Id.* at 220 (rejecting claim for consequential damages where "the record does not contain evidence that, at the time [plaintiff] was employed as an escrow agent, it was reasonably foreseeable that [defendant's] actions would require plaintiff to incur attorney's fees in a specific performance suit"). Gaebel does not allege that, at the time he joined the USPA, he (much less the USPA) contemplated that a breach of the USPA's governing documents would give rise to a claim for emotional damages. Such an allegation would strain credulity.

Because Gaebel has not alleged—and could not plausibly allege—that emotional distress damages were in his contemplation when he joined the USPA, *Moorehead v. State Farm Fire & Cas. Co.*, 123 F. Supp. 2d 1004, 1006–07 (W.D. Va. 2000), is of no help to him. In that case, the court merely found that there was a fact issue as to whether the exception to the general rule had been met. Gaebel's allegations, however, do not nose over the line of dismissal under Rule 12.

## III.   Gaebel has not adequately alleged intentional infliction of emotional distress.

### A.   Virginia law of intentional infliction of emotional distress.

Gaebel argues that federal courts apply a low standard to claims for intentional infliction of emotional distress ("IIED"). (Pl. Br. at 26-27.) But even in federal court, a plaintiff must allege the substantive elements under Virginia law: (1) intentional or reckless conduct; (2) that

17

was outrageous or intolerable; (3) resulting in severe emotional distress; that (4) was caused by the wrongdoer's conduct. *Daniel v. Wells Fargo Bank*, 2013 WL 5723704, *7 (E.D. Va. 2013). Gaebel has failed to meet his burden.

### B.   Gaebel has not alleged that the USPA acted intentionally or recklessly to inflict severe emotional distress.

Gaebel argues that USPA's conduct was "reckless," but his allegations are conclusory and the conduct does not come close to the standard of recklessness required for IIED. (Pl. Br. at 27.) Gaebel cites *Sanford v. Virginia*, where the court ignored "conclusory" allegations of recklessness, but found sufficient allegations of intent because defendants "knew, or should have known, that spreading misinformation about the death of a loved one and preventing family members from seeing the loved one's remains would cause emotional disturbance." 2009 WL 2447959, at *3 (E.D. Va. July 28, 2009). The USPA's conduct—neutrally adjudicating a disciplinary dispute initiated by a USPA member's complaint about concededly serious conduct—does not come close. (*See* MTD at 27-28 (citing cases).)

### C.   The USPA's conduct was not "outrageous or intolerable."

Gaebel argues that "outrageous or intolerable conduct can be established where an individual engages in a multifaceted campaign of misconduct against the plaintiff." (Pl. Br. at 28 (citing *Daniczek v. Spencer*, 156 F. Supp. 3d 739, 761 (E.D. Va. 2016)).) Again, the authority Gaebel relies on is readily distinguishable. In *Daniczek*, the court found outrageousness sufficiently alleged where defendant's conduct included "verbally harassing [plaintiff] in the courtroom," "assaulting [plaintiff] in the courtroom," "swearing out a warrant he knew lacked probable cause and having [plaintiff] served in the courtroom," and having [plaintiff] removed from the Court Appointed Counsel list." *Daniczek*, 165 F. Supp. 3d at 760. The court found that "a reasonable jury could find that [defendant's] campaign of misconduct rose to the level of

'outrageous and intolerable' . . . by taking into account the methods by which he went about the misconduct, the duration and repeated character of the misconduct, and the fact that much of his misconduct occurred while he wore the authoritative mangle of Commonwealth's Attorney." *Id.* at 761. Here, even crediting Gaebel's conclusory allegations of bad faith, the USPA's alleged conduct does not come close to the sustained campaign of harassment at issue in *Daniczek*.

Gaebel also cites the inapposite case *Gilmore v. Jones*, where the court found that plaintiff plausibly alleged outrageousness where defendants published articles "falsely portray[ing] [plaintiff, an anti-racist protestor] as a member of a 'deep state' conspiracy who helped orchestrate violence in Charlottesville and filmed [a violent] attack with foreknowledge that it would occur, all for the purpose of undermining a sitting president and the 'alt right.'" 370 F. Supp. 3d 630, 680-681 (W.D. Va. 2019). Again, the conduct at issue here is not comparable.

### D.  Gaebel has not alleged that his emotional distress was "severe" enough to state a claim for IIED.

Gaebel argues that he has sufficiently alleged his emotional distress is "severe," but this allegation also fails. (Pl. Br. at 29.) Gaebel cites *Daniczek*, where the plaintiff alleged severe distress including "severe and ongoing loss of reputation and professional standing, loss of employment, past and ongoing financial injury, severe emotional distress and other injury"— many of which are qualitatively different from Gaebel's allegations. *Daniczek*, 156 F.Supp.3d at 758. Gaebel also cites *Sanford*, where the court noted the question of plausibility was "close," and the allegations were similar to allegations that had been dismissed in other cases, but sustained the claim for IIED where plaintiff alleged "physical sickness"—which Gaebel has not alleged—along with "loss of sleep," and "loss of the enjoyment of life." *Sanford*, 2009 WL 2447959, at *4. Here, the weight of authority suggests that Gaebel has not sufficiently alleged severity. *See Harris v. Kreutzer*, 624 S.E.2d 24, 33 (Va. 2006); *see also* MTD at 29.

19

### E.  Gaebel has not adequately alleged causation.

Finally, Gaebel's IIED claim also fails because he has not plausibly alleged that the USPA's conduct was a but-for cause of his distress. (MTD at 30.) Gaebel relies on *Sanford*, but even in that case the court held "plaintiff must plead that the defendants' conduct was the actual cause of his distress." *Sanford*, 2009 WL 2447959, at *4. Here, the most plausible inference is that Gaebel's distress was caused by the underlying accusation, and there is no allegation that the USPA's conduct "increased that distress significantly." Indeed, Gaebel seeks to recover the *same* IIED damages in the Burner Lawsuit—which he did not even acknowledge in his Amended Complaint—demonstrating that his alleged distress is based on the allegations underlying the CVC, which are independent from the USPA's response to them. (DX 4 ¶¶ 99 – 103).

### CONCLUSION

The allegations in the Amended Complaint and the plausible inferences that flow from them—viewed in the context of the attachments to the Amended Complaint and the USPA's motion to dismiss Gaebel's Amended Complaint—state no claim against the USPA. The Amended Complaint should be dismissed in its entirety.

Dated: April 14, 2022

By

Heather M. Fields (VSB No. 79175)          Ian M. Dumain (*admitted pro hac vice*)
NELSON MULLINS RILEY                        Mary Kate George (*admitted pro hac vice*)
& SCARBOROUGH                               CYRULNIK FATTARUSO LLP
901 E. Byrd Street, Suite 1650             55 Broadway, Third Floor
Richmond, VA 23219                         New York, NY 10006
Heather.Fields@nelsonmullins.com           idumain@cf-llp.com
Tel.: 804.533.3868                         mgeorge@cf-llp.com
Fax.: 804. 616.4129                        Tel.: 646-844-2466

*Counsel for Defendant United States Polo Association*

21

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing Defendants' Motion to Dismiss

Plaintiff's Amended Compliant under Federal Rule of Civil Procedure 12(b)(6) was

electronically filed and served on all counsel of record via CM/ECF.

Heather M. Fields (VSB No. 79175)
NELSON MULLINS RILEY & SCARBOROUGH
901 E. Byrd Street, Suite 1650
Richmond, VA 23219
Heather.Fields@nelsonmullins.com
Tel.: 804.533.3868
Fax.: 804. 616.4129

*Counsel for Defendant United States Polo Association*

22